## MELZNER, Administrator, Respondent, *v.* NORTHERN PACIFIC RY. CO. et al., Appellants.

### (No. 3,156.)

(Submitted September 13, 1912. Decided October 3, 1912.)

[127 Pac. 146.]

*Personal Injuries—Railroads—Trespassers—Survival of Action —Parties—Last Clear Chance Doctrine—Contributory Negligence—Pleading—Complaint—Measure of Damages—Instructions—Harmless Error.*

Personal Injuries—Death—Survival of Action—Proper Party Plaintiff.
  1.  *Held,* that under section 6494, Revised Codes, providing that an action or cause of action shall not abate by the death of a party, but shall, in all cases where a cause of action arose in favor of such party prior to his death, survive and be maintained by, and, in case such action has not been begun, it may be begun in the name of, his representative, *etc.,* the administrator of the estate of a minor who died before action could be brought to recover damages for personal injuries which he survived for an appreciable length of time, could properly bring suit in that behalf, and that the contention that either the parent or guardian was the proper party plaintiff, under section 6485, had no merit.

Same—Last Clear Chance Doctrine—Contributory Negligence not Defense.
  2.  Contributory negligence is not a defense to a personal injury action which is brought upon the theory that notwithstanding such negligence the defendant had the last clear chance to avoid the injury and failed to exercise it.

Same—Complaint—Sufficiency—Conclusions of Law. •
  3.  A complaint in an action to recover damages for injuries resulting in the death of a boy by being struck by a railroad train, alleged that defendant's engineer saw deceased in the path of his engine, and "did see that the said boy was in danger of being struck by the said engine, that the boy was unobservant of the approach of said engine, and that he then, after so seeing the boy in danger, negligently drove the said engine against the boy," inflicting injury from which he died. *Held,* that the complaint was sufficient to state a cause of action

based on the last clear chance doctrine, and was not open to objection as stating a bare conclusion of the pleader.

Same—Negligence—Conflicting Evidence—Jury Question.

4. The evidence upon the question whether defendant locomotive engineer, after discovering deceased's peril, exercised ordinary care to avoid striking him, having been conflicting, the jury's determination in that respect is conclusive on appeal.

Same—Last Clear Chance Doctrine—Complaint—Contributory Negligence.

5. The rule that where it appears that plaintiff's own act caused his injury, he must allege and prove that in doing as he did he acted according to the standard of a reasonably prudent person, has no application in an action based upon the doctrine of the last clear chance.

Same—Measure of Damages—Survival of Action.

6. The measure of recovery under section 6494, Revised Codes, for personal injuries resulting in the death of a minor in an action brought by the administrator of his estate was the same as the deceased could have recovered had he survived the injury, *viz.*, for physical and mental suffering, for loss of earning capacity, the expenses of medical and surgical attendance, nursing, *etc.*, incident to the injury.

Same—Instruction—Modification—Harmless Error.

7. Where the jury had been explicitly instructed, in a personal injury action against a railroad company and one of its locomotive engineers, based upon the last clear chance doctrine, that defendant's duty arose only after deceased was discovered in a position of peril on the company's track, a modification of an instruction offered by defendant upon the same subject, which, though not erroneous, could only confuse the jury, *held* improper but not prejudicial error.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by A. B. Melzner, administrator of Omer Haddox, deceased, against the Northern Pacific Railway Company and another. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Affirmed.

*Messrs. Gunn & Rasch,* for Appellants, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

The complaint does not state facts sufficient to constitute a cause of action against said defendants, or either of them, and the demurrer thereto should have been sustained. There is no law or statute which confers upon the plaintiff the right to maintain this action. No action for the death of a minor can be maintained other than the actions provided by section 6485, Revised Codes, which gives a right of action to the father, or, in case of his death or desertion of his family, to the mother, for

the injury or death of a minor child, and to a guardian for the injury or death of his ward.

The statute does not give a right of action to the personal representatives of the deceased, but to parents and guardians. (*Durkee* v. *Central Pac. R. R. Co.,* 56 Cal. 388, 38 Am. Rep. 59; *Bond* v. *United Railroads of San Francisco,* 159 Cal. 270, Ann. Cas. 1912C, 50, 113 Pac. 366; *Mayhew* v. *Burns,* 103 Ind. 328, 2 N. E. 793; *Louisville, N. A. & C. Ry. Co.* v. *Goodykoontz,* 119 Ind. 111, 12 Am. St. Rep. 371, 21 N. E. 472; *Winfree* v. *Union Pacific Ry. Co.,* 173 Fed. 65, 97 C. C. A. 392.)

It is contended that a cause of action for damages existed in favor of plaintiff, as the administrator of the estate of deceased, by virtue of section 6494 of the Revised Codes, generally spoken of and referred to as the "General survival statute," which provides that an action or cause of action shall not abate by the death of a party, but shall survive and be maintained "by his representatives or successors in interest." In *Gilman* v. *Dart Hardware Co.,* 42 Mont. 98, 111 Pac. 550, it was pointed out by this court that while section 6486 refers to the "death" of a person not a minor, section 6485 relates to the injury or death of a minor. The latter statute provides for a recovery for injuries as well as death, and the parties upon whom the right of action is conferred are specifically mentioned. Under the principle laid down in the cases above cited from California and Indiana, in which the statute was construed and its scope and effect defined, no right of action is given to anyone else, and no cause of action exists which the personal representatives of the deceased minor can assert. The right of action for injuries to a minor, whether causing death or not, and the right to recover damages which are personal to the minor, as distinguished from the damages recoverable under the statute by the parents for loss of services, is given to the guardian, and whether a cause of action exists for damages which are personal to the minor himself on account of injuries suffered, independently of the statute, when death results from the injuries, the right of action for all damages on account of injuries, as well as for the death of the minor, is primarily vested in the guardian,

and should be prosecuted by him. In order to maintain this action, plaintiff was required to bring himself within the provisions of the statute, or show by pleading and proof that the requirements of the statute could not be complied with and do not apply, and this he has failed to do. The, le is that: "Where, by statute, the first right of action is given a party other than the plaintiff, it is essential to allege the death, desertion, or imprisonment of such party, or show by other allegations that the plaintiff has a right to sue." (5 Ency. of Pl. & Pr. 865; *Martin* v. *City of Butte*, 34 Mont. 281, 86 Pac. 264; *Louisville etc. R. Co.* v. *Lohges*, 6 Ind. App. 288, 33 N. E. 449; *McIntosh* v. *Missouri etc. R. Co.*, 103 Mo. 131, 15 S. W. 80; *Bartlett* v. *Chicago R. I. & P. R. Co.*, 21 Okl. 415, 96 Pac. 468; *Western Union Tel. Co.* v. *McGill*, 57 Fed. 699, 21 L. R. A. 818, 6 C. C. A. 521.)

If it be assumed, for the purpose of argument, that under section 6494 a cause of action for personal injuries and actions *ex delicto* generally survive, it is obvious that the statute does not operate to effect the survival of the cause of action sued on in the case at bar. The basis upon which damages are here claimed is the loss of the decedent's life, which deprived him of the opportunity to earn "much money after he became twenty-one years of age," and the enjoyment of "a long and happy life." A cause of action for damages for such loss never did exist in favor of the deceased, and, in the very nature of things, could not have been maintained or asserted by him, and could not, under the general survival statute, have been transmitted to his personal representatives. (*Belding* v. *Black Hills & Ft. P. R. Co.*, 3 S. D. 369, 53 N. W. 750; *Stewart* v. *United El. L. & P. Co.*, 104 Ind. 332, 118 Am. St. Rep. 410, 8 L. R. A., n. s., 384, 65 Atl. 49; *Dillon* v. *Great Northern R. Co.*, 38 Mont. 485, 100 Pac. 960; *Brown* v. *Chicago & Northwestern Ry. Co.*, 102 Wis. 137, 44 L. R. A. 589, 77 N. W. 748, 78 N. W. 771; *Anderson* v. *Wetter*, 103 Me. 257, 15 L. R. A., n. s., 1005, 69 Atl. 105; *Swanson* v. *Pacific Shipping Co.*, 60 Wash. 87, 110 Pac. 795.)

Recovery is sought here under the doctrine of "last clear chance." The complaint does not state facts to bring the case

within the scope of that doctrine. It does not apply where the negligence of the one is concurrent with that of the other. (*Holmes* v. *Southern Pacific R. Co.*, 97 Cal. 161, 31 Pac. 834; *Drown* v. *Northern Ohio Traction Co.*, 76 Ohio St. 234, 118 Am. St. Rep. 844, 10 L. R. A., n. s., 421, 81 N. E. 326; *Green* v. *Los Angeles etc. R. Co.*, 143 Cal. 31, 101 Am. St. Rep. 68, 76 Pac. 719; *Dygerson* v. *Union Pacific R. Co.*, 74 Kan. 528, 11 Ann. Cas. 207, 7 L. R. A., n. s., 132, 87 Pac. 680.) The concurrent negligence of the plaintiff's decedent appearing upon the face of the complaint, and no facts having been alleged excusing such negligence, brings the case within the rule laid down by this court in *Longpre* v. *Big Blackfoot Milling Co.*, 38 Mont. 105, 99 Pac. 131; *Lynes* v. *Northern Pacific Ry. Co.*, 43 Mont. 317, Ann. Cas. 1912C, 183, 117 Pac. 81; *Harrington* v. *Butte etc. Ry. Co.*, 37 Mont. 173, 16 L. R. A., n. s., 395, 95 Pac. 8; *Meehan* v. *Northern Ry. Co.*, 43 Mont. 72, 114 Pac. 781.

The allegation that after seeing the boy in danger the defendant Barry "negligently drove the said engine against the said boy," is but a conclusion, and insufficient under the rule laid down by this court in *Pullen* v. *City of Butte*, 38 Mont. 194, 21 L. R. A., n. s., 42, 99 Pac. 290; see, also, *Hortenstein* v. *Virginia etc. Ry. Co.*, 102 Va. 914, 47 S. E. 996; *Drown* v. *Northern Ohio Tr. Co.*, 76 Ohio St. 234, 118 Am. St. Rep. 844, 10 L. R. A., n. s., 421, 81 N. E. 326; *Norfolk etc. Ry. Co.* v. *Wood*, 99 Va. 156, 37 S. E. 846; *Cleveland etc. Ry. Co.* v. *Adair*, 12 Ind. App. 569, 39 N. E. 672, 40 N. E. 822; *Reardon* v. *Missouri etc. Ry. Co.*, 114 Mo. 384, 21 S. W. 731.

*Messrs. Maury, Templeman & Davies*, for Respondent, submitted a brief; *Mr. H. L. Maury* argued the cause orally.

It is now the accepted public policy of the United States in actions by the servant against the master, if the master be engaged in interstate commerce, that all rights of action for injury suffered by the servant in his lifetime shall survive for the benefit of a large class, including parents. (See Federal Employers' Liability Act, Chap. 149, 35 Stat. 65, and Amendments,

Chap. 143, 36 Stat. 291, sec. 9.)    Many decisions are to be found
on statutes which are not so plain as our section 6494, Re-
vised Codes, holding that actions for personal injuries that
result in death survive.    We think the most lucid one on the
subject is *Brown* v. *Chicago N. W. Ry. Co.*, 102 Wis. 137, 44
L. R. A. 579, 77 N. W. 748; rehearing denied 78 N. W. 771.
In the opinion a host of cases are reviewed; the public policy is
discussed; the importance of the proposition is admitted by the
court, and the end of the whole review is to the effect that courts
cannot legislate, and that any legislation within constitutional
limits must be sustained and vitalized by judicial action when-
ever litigants demand it.    We see little need in reiterating au-
thorities.    There is an interesting decision along the same lines
from Maryland (*Stewart* v. *United Electric L. Co.*, 104 Md.
332, 118 Am. St. Rep. 410, 8 L. R. A., n. s., 384, 65 Atl. 49), and
to this case there is an interesting note in the volume of the Law-
yer's Reports Annotated (n. s.) in which it occurs.    Perhaps the
most apt case to the one at bar is the cause cited with approval by
our own court in *Flaherty* v. *B*r*`:e Electric Ry. Co.*, 40 Mont.,
at page 460, 135 Am. St. Rep. 630, 107 Pac. 416; that is to say,
the case of *Hedrick* v. *Ilwaco R. & N. Co.*, 4 Wash. 400, 30 Pac.
714.    In that case it was held that a judgment by a child's
administrator for his death is not a bar to an action by the
father for the same cause.    The *Hedrick Case* is even more in
point for decision of the cause at bar than it was in the *Flaherty
Case*.    There is an interesting case discussing whether such a
right of action as the present is a property right before being
liquidated and also the question of survival.    It is *Missouri
Pac. Ry. Co.* v. *Bennett's Estate*, 5 Kan. App. 231, 47 Pac. 183.

Are substantial damages allowed in a cause of this nature?
Much of the brief of appellant is an argument seeking to pro-
cure the court to reverse its ruling as to the measure of damages
as laid down in the opinion in *Beeler* v. *Butte & London Co.*,
41 Mont. 478, 110 Pac. 528.    A comparison of the instruction
given in the *Beeler Case* as to the measure of damages and the
instructions given in the instant case will show that the two
are identical, except that in the instant case the compensation

for loss of impairment to earn money is limited to a period after Omer would have become twenty-one years of age. Beeler was over the age of twenty-one when killed in the Butte & London shaft. We would not go into this branch of the case very fully were it not for the fact that the opinions upon which the Beeler decision rests, as to the feature of damages, are very persuasive as to the survival statute.

Our conception of the true intent and force of our general survival statute originated in the study of these very authorities, and particularly the cases from Pennsylvania. In reviewing the Pennsylvania cases, however, the court should bear in mind a divergence between the statute of Pennsylvania, which embraces only causes pending at the time of the death of the plaintiff, and that of Montana, which envelops all causes of action, as well as actions which, of course, embraces rights such as were enforced in the lower court in this case.

In the case of *Kyes* v. *Valley Tel. Co.*, 132 Mich. 281, 93 N. W. 623, a verdict of $5,000 was sustained and the deceased lived only about one day. It was, pure and simple, an action of the deceased survived to the administrator. In *Hesse* v. *Meriden Tramway Co.*, 75 Conn. 571, 54 Atl. 299, it was claimed that only nominal damages could be recovered. The decedent lived only some minutes after the accident. A verdict of $5,000 was sustained. See, also, *Maher* v. *Phil. Traction Co.*, 181 Pa. 391, 37 Atl. 571, and *Davidson Benedict Co.* v. *Severson*, 109 Tenn. 572, 72 S. W. 967, in which there is a most interesting discussion of the entire subject of damages in such a case devoted almost exclusively to this one topic.

On the question whether the damages in this case before the court are exorbitant, we call to the court's attention the opinion in *Zibbell* v. *Southern Pacific Ry. Co.*, 160 Cal. 237, 116 Pac. 513, where a verdict for $100,000 was reduced to and sustained for $70,000. The loss to Omer Haddox was greater than the loss to Zibbell. Zibbell lost only two arms and a leg. Omer Haddox lost all.

As to the law of the doctrine of discovered peril, we can add nothing that is not contained in the decisions of the supreme

court of Montana.    The first expression of the court on the subject, as far as we know, was in *McMasters* v. *Montana Union Ry. Co.*, 12 Mont. 165, 30 Pac. 268.

It is rather interesting to note that the doctrine of the last clear chance in Montana arose first in the case of an animal in the way, as was the case when it first arose in the English common law.    Here it may be interesting to quote the North Carolina supreme court: "The case therein cited (*Davies* v. *Mann*, 10 Mees. & W. 545), in which the plaintiff's immortal donkey, by its death, established a great principle, anl left a world-known name, is regarded as the origin of the rule.    The plaintiff fettered the front feet of his donkey, and turned him into the highway to graze.    The defendant's wagon coming down a slight descent at a 'smartish' pace, ran against the donkey and knocked it down, the wheels of the wagon passing over it. The poor brute meekly closed its wearied eyes and gave up the ghost, an apparently immortal spirit that has long since put Banquo's ghost to shame.    From such an humble beginning arose the great doctrine of the last clear chance." (*Bogan* v. *Carolina Central Ry. Co.*, 129 N. C. 154, 55 L. R. A. 42, 39 S. E. 808.) It was next clearly enunciated in *Egan* v. *Montana Cent. Ry. Co.*, 24 Mont. 569, 63 Pac. 831.    The next time the doctrine arose, so far as we know, was in *Riley* v. *Northern Pacific Ry. Co.*, 36 Mont. 565, 93 Pac. 948, and then follows the case of *Neary* v. *Northern Pac. Ry. Co.*, 37 Mont. 461, 97 Pac. 944.    And then in *Yergy* v. *Helena Lt. Co.*, 39 Mont. 223, 18 Ann. Cas. 1201, 102 Pac. 310, the doctrine is again set forth and discussed at length; and again in the second *Neary Case*, 41 Mont. 485, 110 Pac. 226.    There are very few cases previous to the last decision of the *Neary Case* that have not been called to the attention of the court and considered with reference to this rule of law which we invoke.    In reading counsel's brief, we came across one which is very aptly in our favor, and would suggest that the court examine it if the court is not already familiar with it (*Reardon* v. *Missouri etc. Ry. Co.*, 114 Mo. 384, 21 S. W. 731); particularly on the proposition that Reardon was approaching

the track and getting into danger, rather than being already on it.

In summarizing this cause, we feel that every point urged by counsel for the appellant is answered by statute or by the decisions of the supreme court of Montana.

Appellants' Brief in Reply to that of Respondent.

In support of their contention that plaintiff was entitled to recover as damages the value of decedent's life for the entire period of his natural expectancy, counsel cite *Beeler* v. *Butte & London C. D. Co.,* 41 Mont. 478, 479, 110 Pac. 528. That was an action brought by the heirs of Edwin Beeler, deceased, under sections 5248 and 5250 of the Revised Codes, which provide that every company, corporation or individual operating any mine shall be liable "for any damages sustained" by an employee, and that the right of action shall survive, in case of death "in consequence of any injury or damages so sustained," to his heirs or personal representatives. The court applied in that case the rule which, after much difficulty encountered in an effort to reach a satisfactory conclusion as to the proper construction of the Michigan statutes, was finally adopted by the supreme court of Michigan (*Sweetland* v. *Railway Co.,* 117 Mich. 329, 43 L. R. A. 568, 75 N. W. 1066; *Dolson* v. *Railway Co.,* 128 Mich. 444, 87 N. W. 629; *Kyes* v. *Valley Tel. Co.,* 132 Mich. 281, 93 N. W. 623, and *Oliver* v. *Railway Co.,* 134 Mich. 367, 104 Am. St. Rep. 607, 3 Ann. Cas. 53, 96 N. W. 434), and held that under the statute Beeler's right of action, which the heirs were prosecuting, "included damages for the pain and suffering that he endured and for his diminished and lost earning capacity for the period of his natural expectancy." The rule adopted by the supreme court of Michigan, and applied by this court in the *Beeler Case,* proceeds upon the theory that where a statute gives a right of action for death, and another statute provides for the survival of the cause of action for personal injuries, which have resulted in death, but one cause of action accrues, and only one right of action can be availed of.

Where death is instantaneous, the action must be prosecuted under the death statute, but where the injured person survives his injuries for an appreciable period of time, the action must be brought under the survival statute, and one is exclusive of the other,   The same is true of the decisions of the supreme court of Pennsylvania, in which the death and survival statutes of that state have been considered, and which do not, as counsel assert, embrace ''only causes pending at the time of the death of the plaintiff.''   (*McCafferty* v. *Pennsylvania R. Co.*, 193 Pa. 339, 74 Am. St. Rep. 690, 44 Atl. 435, and *Edwards* v. *Gimbel*, 202 Pa. 30, 51 Atl. 357, both cited in the note to *Stewart* v. *United Electric etc. Co.* [104 Md. 332, 118 Am. St. Rep. 410, 65 Atl. 49], 8 L. R. A., n. s., on page 388).   So, likewise, in Connecticut, but one right of action is given, whether the death is instantaneous or not.   (*Broughel* v. *Southern etc. Tel. Co.*, 72 Conn. 617, 49 L. R. A. 404, 45 Atl. 435, 437.)   Nor does the case of *Muldowney* v. *Illinois Cent. R. Co.*, 36 Iowa, 462, announce a different rule.   The question presented there was whether in an action which had been commenced by the deceased in his lifetime, and which was continued by his personal representative after his death, bodily pain and mental suffering constituted proper elements of damages.   The court held that they did, and that was all that was decided in that case, but, says the court, ''a different rule would maintain if the action had been commenced after his death for the benefit of his estate.''

The same rule prevails in Tennessee, and the *Davidson-Benedict Co. Case*, referred to by counsel, is also cited in the note to *Stewart* v. *United Electric etc. Co.*, 104 Md. 332, 118 Am. St. Rep. 410, 8 L. R. A., n. s., 389, 65 Atl. 49, and with it the Tennessee case of *Holston* v. *Dayton Coal etc. Co.*, 95 Tenn. 521, 32 S. W. 486.   The case of *Missouri Pacific Ry. Co.* v. *Bennett's Estate*, 5 Kan. App. 231, 47 Pac. 183,  also cited by counsel, is a decision of the Kansas court of appeals, and being in conflict with the rule theretofore laid down by the supreme court of that state, was subsequently disapproved in *Missouri Pacific Ry. Co.*

v. *Bennett's Estate,* 58 Kan. 499, 49 Pac. 606; *Martin* v. *Missouri Pacific Ry. Co.,* 58 Kan. 475, 49 Pac. 605.

The rule adopted by the courts of Michigan and Pennsylvania was applied by this court in the *Beeler Case,* and as it was subsequent in point of time to *Johnson* v. *Butte & Superior Copper Co.,* 41 Mont. 158, 108 Pac. 1057, also prosecuted under sections 5248 and 5250, in which the court found it unnecessary to determine whether another action could be maintained under the death statute, it would seem to follow that but one right of action is conferred by the fellow-servant Acts of this state, even though the facts of the case would also make it one giving rise to a cause of action under the death statute. And, if there were in force in this state a statute providing for the survival of actions for personal injuries generally, but one action could be maintained in case of resulting death, and that either under the death or under the survival statute, according to the facts of the case bringing the case within the provisions of one or the other. But whatever the rule may be in cases of that kind, it is perfectly obvious that it is not applicable here. We are not considering a statute generally providing for the survival of actions for personal injuries, and the effect it should be given as to the right to maintain an action under it, where there is also a statute giving a right of action for the death, but the statute we are concerned with gives two rights of action—one to the parents for all damages, present and future, sustained by them, another for the damages personal to the deceased himself. The latter right is conferred upon the guardian, and the damages which he could recover would be limited, under the rule announced by the courts where it is held that two causes of actions are given, to such as accrued to the deceased between the time of the injury and his death. (See *Brown* v. *Chicago Ry. Co.,* 102 Wis. 137, 44 L. R. A. 589, 77 N. W. 748, 78 N. W. 771; *Davis* v. *St. Louis etc. Ry. Co.,* 53 Ark. 117, 7 L. R. A. 283, 13 S. W. 801; *Belding* v. *Black Hills & Ft. P. Ry. Co.,* 3 S. D. 369, 53 N. W. 750; *Swanson* v. *Pacific Shipping Co.,* 60 Wash. 87, 110 Pac. 795; *Stewart* v.

*United Electric L. & P. Co.*, 104 Md. 332, 118 Am. St. Rep. 410, 8 L. R. A., n. s., 384, 65 Atl. 49; *Anderson* v. *Wetter,* 103 Me. 257, 15 L. R. A., n. s., 1005, 69 Atl. 105.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought by A. B. Melzner, as administrator of the estate of Omer Haddox, deceased, to recover damages for personal injuries which resulted in death. On January 20, 1909, at Whitehall, Montana, Omer Haddox, a minor about fourteen years of age, was struck by a locomotive driven by the defendant Barry and operated by the defendant railway company. The injury resulted in the death of the boy. The complaint is drawn upon the theory that, after Engineer Barry discovered the peril in which the boy was situated, he still had a last clear chance to avoid injuring him, but failed to exercise ordinary care. The trial resulted in a verdict and judgment in favor of plaintiff, and from that judgment and an order denying them a new trial the defendants have appealed.

1. It is insisted that the complaint does not state a cause of action, and the familiar rule announced by this court in *Martin* v. *City of Butte,* 34 Mont. 281, 86 Pac. 264, is invoked. In that case we said: "It will not do to say that it is sufficient that the complaint states a cause of action against the defendant. To support this judgment, the complaint must state facts sufficient to constitute a cause of action against the defendant and in favor of the plaintiff." It is urged that the rule is peculiarly applicable in the present instance, because this action is sought to be prosecuted by the administrator of the estate of the deceased minor. Appellants insist that any action which might be maintained must be brought by the parent or guardian of the minor, under section 6485 of the Revised Codes, which provides: "A father, or in case of his death, or· desertion of his family, the mother may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another.  *  *  *  " Assuming, as we may, that

in so far as section 6485 refers to actions for damages for injuries to minors which do not result in death, it does not create any new right of action, but only gives recognition to the right of action existing at common law, and that, so far as it deals with actions for damages for the death of minors, it creates new rights of action which were unknown to the common law, and follows, in substance, if not in form, the English statute known as Lord Campbell's Act, we may consider the rights mentioned so far as they are involved here.

It is very clear that whether the parent prosecutes the common-law or statutory action his right is one personal to him, the purpose of which is to enable him to recover damages by way of compensation for the loss of the minor's services to which, as parent, he would be entitled until the boy reached majority, or, possibly, until he was emancipated. (*Durkee* v. *Central Pac. R. R. Co.,* 56 Cal. 388, 38 Am. Rep. 59; *Hedrick* v. *Ilwaca R. & N. Co.,* 4 Wash. 400, 30 Pac. 714.) But, whatever right of action the parent has, it is altogether different from the right which is sought to be enforced in this instance, and therefore the provisions of section 6485 which deal with the parent's right are not applicable here, and need not be considered further. It is also equally plain that the provisions of section 6485 which refer to the right of a guardian to sue for damages for the death of his ward have no application, for this action is not of that character. In their reply brief counsel for appellants properly characterize this action now before us as " 'the common-law action which he [the minor] had for the injuries which he received, and which accrued to him at the time of his injuries, and remained available to him until the instant of his death' [and], which the plaintiff, as the administrator of the deceased minor, now seeks to prosecute," *etc.* (*Johnson* v. *Butte & Sup. Copper Co.,* 41 Mont. 158, 108 Pac. 1057.) Our inquiry concerning the meaning to be given to section 6485 is limited to the provision with reference to the right of the guardian to maintain an action for injury to his ward.

If this action was one for damages for injuries which the minor survived, no difficulty would be encountered; for at common

law the infant plaintiff sued by guardian *ad litem,* while under
our statutes he appears by his general guardian or his guardian
*ad litem.* (Rev. Codes, secs. 3599, 6481; *Flaherty* v. *Butte El.
Ry. Co.,* 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416.)
The fact that this action is brought to recover damages for in-
juries which resulted in the death of the minor, and that the
action was not commenced until after the minor's death, pre-
sents the difficulties which confront us.    Counsel for appellants
insist that in an action of this character the provisions of sec-
tion 6485 are controlling, and the action must be prosecuted
by the guardian, the only logical conclusion from which is that,
if at the time of his death the minor did not have a guardian,
the action cannot be maintained at all, and *Bond* v. *United Rail-
roads,* 159 Cal. 270, Ann. Cas. 1912C, 50, 113 Pac. 366, is cited
as apparently approving such a conclusion.    However, an ex-
amination of the case just cited discloses that the only contro-
verted question before the California court for decision related
to the measure of damages in an action by a mother for the
death of her son, and that the observation upon section 376 of
the California Code of Civil Procedure was pure *dictum.*    In
the elaborate briefs submitted by counsel not a case is called to
our attention which determines the question now under consid-
eration, and we doubt whether a case of that character can be
found.    California, Indiana, Washington, and probably other
states, have statutes identical with, or similar to, our section
6485 above, but apparently the particular question now raised
by appellants has not been considered or determined.

We preface our remarks by saying that we think the evidence
sufficient to show that Omer Haddox survived his injuries for
[1]    an appreciable length of time, and therefore he had a
cause of action for damages for the injuries sustained, assuming
for the present that his injuries were caused proximately by
the negligence of the defendants.    (*Dillon* v. *Great Northern
Ry. Co.,* 38 Mont. 485, 100 Pac. 960; *Kellow* v. *Central Iowa Ry.
Co.,* 68 Iowa, 470, 56 Am. Rep. 858, 23 N. W. 740, 27 N. W.
466.)    If there is any right of action disclosed by this complaint,
it is the identical right which Omer Haddox had at the time

of his death, but to enforce which no action had been commenced during his lifetime. At common law such a right of action literally died with the decease of the injured party (*Dillon* v. *Great Northern Ry. Co.*, above), and could not thereafter be revived or prosecuted by anyone. That rule is in force in this state to-day, unless it has been abrogated by statute. It is clear that the rule was not affected by section 6485. That section is not in any sense a survival statute, and cannot be appealed to by anyone as authority to maintain an action of this character. But section 6494, Revised Codes, provides that an action or cause of action shall not abate by the death of a party, but shall in all cases where a cause of action arose in favor of such party prior to his death survive and be maintained by his representatives, and, in case such action has not been begun, it may be begun in the name of his representative; and, in case the action was begun prior to his death, the court on motion will permit his representative to be substituted and the action to proceed in his name. But it is most earnestly urged that this section does not effect a survival of an action for personal injury; that it applies only to causes of action which survived at common law, and many cases are cited in support of this contention:

*Slauson* v. *Schwabacher*, 4 Wash. 783, 31 Am. St. Rep. 948, 31 Pac. 329, involved only the question of the assignability of a claim for damages.

In *Jones* v. *Miller*, 35 Wash. 499, 77 Pac. 811, the court had under consideration section 5695, Ballinger's Annotated Codes, which provides: "All other causes of action by one person against another, whether arising on contract or otherwise, survive to the personal representatives." Standing alone, the meaning of that section would be difficult to determine; but when it is read in connection with section 703, Hill's Code of Washington,—a section which immediately preceded it in the original Act,—other sections of the Washington Code and the history of the legislation in that state upon the subject, beginning with the Act of 1869, it becomes apparent that section 5695 does not include actions for purely personal torts. Section 5695 deals with actions by or against administrators and executors;

but in the same Code of Washington, in treating of parties to civil actions, is found section 193, which provides that "no action shall abate by death of the party, if the cause of action survive or continue." Construing these several statutes together in the light of their history, and the correctness of the Washington court's conclusion is manifest at once.

In *Schreiber* v. *Sharpless*, 110 U. S. 76, 28 L. Ed. 65, 3 Sup. Ct. Rep. 423, the question presented was whether an action for penalties and forfeitures under the copyright law survives by virtue of section 955, United States Revised Statutes (U. S. Comp. Stats. 1901, p. 697). That section provides for the substitution of an administrator "in case the cause of action survives by law." The court held that an action for penalties and forfeitures abated with the death of the wrongdoer at common law, and that section 955 does not work the survival of such an action.

In *Martin's Admr.* v. *Baltimore & Ohio R. Co.*, 151 U. S. 673, 38 L. Ed. 311, 14 Sup. Ct. Rep. 533, a statute of West Virginia modeled after Lord Campbell's Act, and another statute whose terms are apparently conflicting, were considered. The conclusion reached was that, considering the several provisions of the West Virginia statute together, it was apparent that the legislature intended to provide the procedure only, and not to effect the survival of an action which did not survive at common law. However, there was an able dissenting opinion by Justice Harlan, the logic of which commends itself to the critical mind. The like conclusion was reached in *Flinn* v. *Perkins*, 32 L. J. Q. B. 10, where the English Law Procedure Act was construed, which contains a clause similar to that found in section 955, United States Revised Statutes, above.

In *Schmidt* v. *Menasha Woodenware Co.*, 99 Wis. 300, 74 N. W. 797, a statute modeled after Lord Campbell's Act was considered, but, since statutes of that character are not survival statutes in any sense of the term, that case is not of any moment here.

In *Baltimore & Ohio R. Co.* v. *Ritchie*, 31 Md. 191, a statute of that state enacted in 1785 (Laws 1785, c. 80) was under

consideration. The statute is in very general terms, but the Maryland court held that it was not intended to prevent the abatement of actions which abated at common law, and that construction was accepted by the supreme court of the United States in *Martin's Admr.* v. *Baltimore & Ohio R. Co.,* above. Whether the Maryland court's conclusion is right or wrong is not very material here; for in so far as it differs from our own conclusion upon our statute, we decline to follow it.

Reference is also made to *Lynde* v. *Wakefield,* 19 Mont. 23, 47 Pac. 5. That was an action by Mrs. Black to recover her dower interest in certain real estate, and for rents and profits. She prevailed in the lower court, and the defendant appealed, but before the cause was heard in this court Mrs. Black died, and the administrator of her estate asked to be substituted. The motion was contested upon the ground that Mrs. Black's right of action abated with her death. In determining the controversy thus raised, this court, speaking through Chief Justice Pemberton, said: "This cause was commenced under, and must be determined by, the provisions of section 22, page 63, Code of Civil Procedure, Compiled Statutes of 1887." After referring to the common-law rule under which the action would have abated, the court proceeded: "But we think under our statute and the great weight of authority a different rule prevails in equity." Works on equity are then appealed to, and the conclusion of the court is announced as follows: "We are therefore of the opinion under our system of jurisprudence, where we have 'but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs which shall be [the] same at law and in equity' (section 1, Chapter 1, Code of Civil Procedure, Compiled Statutes of 1887), and where law and equity are merged in the same tribunals, that the right to prosecute this suit for the collection of the rents and profits of the dower estate of Mary A. Black survives to her legal representative." It is urged upon us that, if Mrs. Black's action survived under section 22 of the Compiled Statutes, there was not any occasion for the court to appeal to the rule in equity, and with this we agree. But, if the court

had studied the history of our legislation upon the subject of survival of actions, we are confident the same result would have been reached without reference to any work on equity.

It will thus be seen that not a case cited above, with the possible exception of *Baltimore & Ohio R. Co.* v. *Ritchie,* is an authority upon the proper construction to be given to a statute like our section 6494 above. The language of that section is so comprehensive and its meaning so apparent that it would seem to need no construction.

It is not the province of a court to say that the legislature did not mean what the language employed clearly indicates, unless a consideration of other provisions, or the history of the Act, makes clear a meaning contrary to that which the Act alone would seem to indicate.   There is not anything in other provisions of our Codes to indicate that the legislature intended the language employed to be given a restricted meaning or a limited application, while the history of the measure very clearly indicates a contrary purpose.   Prior to 1883 we had on our statute books a section which provided that an action does not abate by the death of a party "if the cause of action survive or continue." (Section 22, First Div., Rev. Stats. of 1879.)   That statute was similar to those considered in the cases above, except the Maryland and Wisconsin cases.   By an Act approved March 7, 1883 (Laws 1883, p. 98), section 22 above was repealed, and in its stead was substituted the statute as we have had it ever since, and as it is found at the present time in section 6494 above.   If it was the intention of the legislature that only such causes of action should survive as survived at common law, then the Act of 1883 is meaningless; for section 22 of the Revised Statutes designated the parties who might maintain any action which did survive and provided the procedure.   The new Act of 1883 did nothing more, if the contention of counsel for appellants is sustained.   But we are not at liberty to assume that in repealing one statute and substituting another therefor the legislature was indulging in mere idle pastime.   If section 22 of the Revised Statutes of 1879 expressed the legislative will, then there was not any occasion for a substitution of another

for it; and the fact that the substitution was made is evidence sufficient that the provisions of section 22 were not satisfactory. It will be observed that section 22 was not a survival statute at all. It merely designated the parties who might pursue an action which did survive, leaving the common-law rule in full force and effect. By the Act of 1883 an entirely new rule was substituted. That Act is a general survival statute, by the terms of which in all cases where a cause of action arose in favor of a party prior to his death such cause of action shall not abate but shall survive and be maintained by the personal representative of the party. If the purpose which animated the legislature in passing the Act of 1883 was not to substitute a general survival statute for the common-law rule, then it seems impossible that any reason whatever can be assigned for the legislative action. We are satisfied, however, that our construction is correct; that section 6494 comprehends tort actions as well as others, and that if this history of our legislation had been called to the attention of the court in *Lynde* v. *Wakefield,* above, that case would have been determined upon the statute alone.

In so far as section 6485 authorizes a guardian to prosecute an action for injury to his ward, it relates only to such an action as the minor has during his lifetime; while, in case of the death of the minor, his action or right of action survives and is to be maintained by his personal representative—in this instance by the administrator of his estate. To say that after the death of a minor his guardian may maintain an action for injuries which accrued to the ward in his lifetime involves the legal absurdity that there may be a guardian without a ward. It would seem that the death of the ward would terminate the guardianship, except for the purpose of a settlement and possibly such other proceedings as the guardian, acting as a trustee of the estate in his hands, might take. Certainly it was never intended that the guardian might maintain an action for damages arising. from the wrongful injury to the ward, and that the administrator of the ward's estate might maintain another action for the same cause; and, since the administrator is specifically authorized to maintain the action which the minor could have maintained

if he had survived his injury, it follows that, whatever meaning is to be given to section 6485, it cannot be made to comprehend an action of the character of the one before us. Just what is meant by the provision in section 6485 which gives the guardian a right of action for the death of his ward need not be determined, as it is not involved in this action. Doubtless the construction given to a similar provision by the supreme court of Indiana in *Louisville, N. A. & C. Ry. Co.* v. *Goodykoontz,* 119 Ind. 111, 12 Am. St. Rep. 371, 21 N. E. 472, is correct.

2. For the purposes of this appeal, we may agree with counsel [2] for appellants that the complaint in this action shows upon its face that Omer Haddox was guilty of negligence which contributed to his injuries. But in jurisdictions where the doctrine of the last clear chance prevails, as it does in this state, it is not fatal to a complaint that contributory negligence on the part of the plaintiff appears and a plea of contributory negligence is not a defense if the action is brought upon the theory that, notwithstanding such negligence, the defendant had the last opportunity to avoid the injury, and failed to exercise it. The rule of pleading in cases which do not invoke the doctrine of the last clear chance does not have any application in the present case, which depends entirely upon that doctrine.

For the purposes of this case we may agree with counsel for appellants that, if the negligence of plaintiff concurs with that of the defendant up to and producing the injury, no recovery can be had, for under such circumstances there could not be room for the application of the doctrine of the last clear chance; but we think the evidence in this case sufficient to go to the jury as tending to show that after Omer Haddox negligently went within striking distance of the train, the engineer had a last clear opportunity to avoid striking him.

3. But appellants further insist that the allegations of this [3] complaint are insufficient to state a cause of action based upon the doctrine of the last clear chance, and for the purposes of this appeal we may concede, without deciding, that the rule announced by the Virginia court in *Hortenstein* v. *Virginia etc. Ry. Co.* (Sup. Ct. App.), 102 Va. 914, 47 S. E. 996, is correct

and applicable here. It was there held that as to a trespasser the railway company cannot be held responsible for his injuries, unless it appears that after the company discovered his peril it could, in the exercise of ordinary care, have avoided the injury. The Virginia court, however, was stating a rule of substantive law rather than a rule of pleading. But assume that its declaration correctly states the rule of pleading. It is but another way of saying that, after the railway company discovered the trespasser's peril, it negligently ran him down and injured him. The particular form of expression is not of any consequence, if the charge of negligence after peril discovered is made to appear. The complaint in the present instance sets forth quite fully the facts showing the peril in which Omer Haddox had placed himself, and then alleges "that the said defendant engineer did see the boy Omer Haddox in the path of his engine, and did see that the said boy was in danger of being struck by the said engine, and that the boy was unobservant of the approach of said engine; that he then, after so seeing the boy in danger, negligently drove the said engine against the said boy, inflicting grievous bodily injury upon the said boy, from which grievous bodily injury the said boy died an appreciable time after the injury was so inflicted upon him." We think this is sufficient to meet the requirements of the rule announced in *Pullen* v. *City of Butte,* 38 Mont. 194, 21 L. R. A., n. s., 42, 99 Pac. 290; see, also, 6 Thompson on Negligence, secs. 7447, 7466.

Upon the question whether the engineer, after discovering the boy's peril, exercised ordinary care to avoid striking him, the evidence is conflicting, and with the jury's determination we cannot interfere. The question had to be determined by a consideration of the personnel of the witnesses, their apparent interest in the controversy, their qualifications to give expert or opinion evidence, and other matters, all properly cognizable under the generic term "credibility."

It must be obvious to anyone that the rule announced in *Kennon* v. *Gilmer,* 4 Mont. 433, 2 Pac. 21, and followed in many later cases, particularly in *Lynes* v. *Northern Pacific Ry.*

*Co.*, 43 Mont. 317, Ann. Cas. 1912C, 183, 117 Pac. 81, to the effect that, if it appears that plaintiff's own act caused his injury, he must show "that in doing the particular act he was moved by those considerations for his own safety which would actuate a reasonably prudent person, similarly situated, to do as he did," cannot have any application in an action based upon the doctrine of the last clear chance; it being confined exclusively to an action in which contributory negligence constitutes a defense.

4. Touching the question of the measure of damages, counsel for appellants quote from *Belding* v. *Black Hills & Ft. P. R. Co.*, 3 S. D. 369, 53 N. W. 750: "The personal representative [6] can, in our opinion, recover no damages that could not have been recovered by the deceased had he survived the injury. He cannot, under that statute, recover for the loss of the life of the deceased." The Dakota court was considering the measure of recovery under a survival statute for injuries resulting in death in a case similar to the one now before us. We agree entirely with the rule as stated above, which, however, is rather in negative form. The court proceeded: "The personal representative, under that section, can only recover in the same manner the deceased could have recovered had he survived the injury." We also agree with that court in its further enunciation of the rule as stated in the affirmative. The court propounds the question, "In what manner, and under what circumstances, could the deceased have recovered had death not ensued," and then answers as follows: "He could have recovered, in addition to his physical and mental suffering, for loss of time and employment, the expenses of medical and surgical attendance, nursing, *etc.*, incident to the injury." The same rule is announced by the supreme court of Pennsylvania in *Maher* v. *Philadelphia Traction Co.*, 181 Pa. 391, 37 Atl. 571, in an action by the administrator of the estate of Agnes Maher, deceased, for damages for injuries which resulted in her death. The court said: "It logically follows that the damages recoverable by her personal representative should be the same as she could have recovered had death not ensued. Included therein

are damages for pain and suffering up to the time of her death, and diminution of earning power during a period of life which she would have probably lived had the accident not happened. It is a mistake to suppose that the recovery in this case is for the death. It is still for the personal injury." After quoting from *Moe* v. *Smiley,* 125 Pa. 141, 3 L. R. A. 341, 17 Atl. 229, the following: "It is idle to say that, when a man is killed by unlawful violence, it is not an injury to his person"—the court continues: "An element of the injury in such case is the total impairment of the earning power, placed beyond the possibility of doubt by the death, and hence a simpler problem for the jury; but the measure of damages therefor is the same as if the party had survived." But a reference to decisions from other states is not necessary, for the same general rule was announced by this court in *Beeler* v. *Butte & London C. Dev. Co.,* 41 Mont. 465, 110 Pac. 528; and in the present instance the court very clearly directed the jury as to the proper measure of plaintiff's recovery, in an instruction which follows almost verbatim the language of the instruction approved in the *Beeler Case.*

5. At the request of defendants the trial court gave an instruction (5A), but with a modification. As given, it directed [7] the jury that if after engineer Barry discovered that Omer Haddox was within, or going within, striking distance, he exercised ordinary care to avoid injuring him, the verdict should be for the defendants. The modification made by the court consisted in inserting the words "or going within." Instead of modifying the instruction tendered, the court should have refused it altogether. The subject had been fully covered in other instructions given, one of which (3A) was sufficient in itself. 5A is not erroneous, but it should not have been given. If it served any purpose at all, it was only to confuse the jury. But, since the rule of law was so explicitly stated in instruction 3A, we must assume that the jury understood that the defendants' duty arose only after the boy was discovered in a position of peril.

We have treated the questions which seem to us to demand particular attention; and, finding no reversible error, it is or-

dered that the judgment and order denying defendants a new trial be and they are affirmed.                    *Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument, and takes no part in the foregoing decision.

(Submitted September 13, 1912. Decided October 3, 1912.)