---

WILLOBURN RANCH CO., RESPONDENT, *v.* YEGEN ET AL., APPELLANTS.

(No. 3,092.)

(Submitted March 15, 1912. Decided March 22, 1912.)

[122 Pac. 915.]

*Default Judgments — Vacation — Mistake of Law — Trusts — Complaint—Insufficiency.*

Default Judgments—Vacation—Mistake of Law.
 1.  A default judgment will not be set aside for a mistake of law on the part of defendant.

Same—Insufficient Complaint.

2. A default judgment based upon a complaint which failed to state facts sufficient to constitute a cause of action will be set aside on appeal.

Same—Trusts—Complaint—Insufficiency.

3. A complaint in an action to have one declared a constructive trustee of certain real property and shares of stock, delivered with other property to defendant by the owner to be held "in trust until such time as the proceeds derived from the rents and profits of the same, or a sale thereof or any part thereof," should pay all outstanding indebtedness due thereon by the trustor, *etc.,* and sold to plaintiff, was insufficient to state a cause of action in that it did not set forth that the purpose for which the trust was created had been fulfilled.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by the Willoburn Ranch Company against Christian and Peter Yegen. From a judgment by default against Peter Yegen and an order refusing to set aside the default, he appeals. Reversed and remanded.

*Mr. F. B. Reynolds,* for Appellants, submitted a brief and argued the cause orally.

The rule is well established that if a complaint makes merely a defective statement of a cause of action, such defective statement is cured by verdict or judgment; but that if the complaint fails in making any statement at all of any essential elements of plaintiff's case, such failure is not cured by a verdict or judgment. It is the contention of the appellant that the complaint in the case at bar absolutely fails to show directly or indirectly that any duty devolved upon either defendant to transfer the stock in question to plaintiff or any breach of the contract set forth in the complaints as a basis of this action. "In a complaint, the necessary facts to constitute a cause of action must be stated in unequivocal language and not left to inference." (*People* v. *Central Pacific Ry. Co.,* 76 Cal. 29, 18 Pac. 90, 95; *Moore* v. *Besse,* 30 Cal. 570; *Corbin Oil Co.* v. *Searles,* 36 Ind. App. 215, 75 N. E. 293; *Atchison etc. Ry. Co.* v. *Atchison Grain Co.* (Kan.), 70 Pac. 933; *Gunning* v. *People,* 189 Ill. 165, 82 Am. St. Rep. 433, 59 N. E. 494; *McElwaine-Richard Co.* v. *Wall,* 159

Ind. 557, 65 N. E. 753; *Spiker* v. *Bohrer,* 37 W. Va. 258, 16 S. E. 575; *People* v. *Huffman,* 182 Ill. 390, 55 N. E. 981; *Malott* v. *Sample,* 164 Ind. 645, 74 N. E. 245.)

For Respondent, *Mr. M. J. Lamb* submitted a brief and argued the cause orally.

Appellant's charges as to the sufficiency of the complaint amount to nothing more than a contention that the complaint is uncertain or indefinite.

"All uncertainties, irregularities, ambiguities, informalities, imperfections, and other defects in the manner of alleging a cause of action or defense, if a valid cause of action, * * * may nevertheless, with the aid of all lawful and reasonable presumptions, be found, even by implication, in the pleading, will be cured by the judgment." (31 Cyc., p. 769; 6 Ency. of Pl. & Pr. 122.) Irregularities or defects in the statement of a cause of action are waived by failing to answer. If no demurrer has been interposed, a judgment will not be reversed unless there is an entire failure to plead material facts, and the default judgment "will cure all such defective averments as may by fair and reasonable intendment be found to have been pleaded, although defectively." (*Alexander* v. *McDow,* 108 Cal. 29, 41 Pac. 24; *Hibernia Savings & Loan Soc.* v. *Ordway et al.,* 38 Cal. 679; *Hallock* v. *Jaudin,* 34 Cal. 167; *People* v. *Rains,* 23 Cal. 128.) In *Harmon* v. *Ashmead,* 60 Cal. 439, the court said: "Defects in the statement of a cause of action may be waived by failing to answer, or by answering to the merits. But * * * these allegations are not a defective statement of a cause of action, and a defective cause of action is not cured by failure to answer or by verdict."

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced on July 19, 1911, against Christian Yegen and Peter Yegen. Summons was served upon Peter Yegen on August 17. On September 11 his default was en-

tered for want of an appearance.   The action was dismissed as
to Christian Yegen, and on September 15 plaintiff made proof
and judgment was regularly rendered and entered against Peter
Yegen, who thereafter, on September 27, moved the court to set
aside the judgment, open the default, and permit him to answer.
The motion was supported by an affidavit accompanied by a pro-
posed answer.   The motion was denied, and defendant Peter
Yegen has appealed from the judgment and from the order re-
fusing to set aside the default.

1. The first ground of the motion to set aside the default is a
mistake on the part of defendant Peter Yegen; but the affidavit
[1]   discloses that the mistake was one of law, not of fact, and the
trial court properly refused the motion on that ground.   (*Man-
tle* v. *Casey,* 31 Mont. 408, 78 Pac. 591.)

2. The second ground of the motion presents the same question
[2]   as the appeal from the judgment, *viz.:* Does the complaint
state facts sufficient to constitute a cause of action?

3. The complaint alleges that on November 26, 1902, G. W.
Connick was in possession of a section of land and one hundred
and twenty-eight shares of the capital stock of the Big Ditch
Company, a corporation, under a contract to purchase the same
from Edward G. Bailey; that there was then due on the purchase
price of such property installments aggregating $5,580, with in-
terest at seven per cent per annum, the last of the installments
to become due April 1, 1907.   It is alleged that on December 26,
1902, an agreement was entered into between Connick and de-
fendant Christian Yegen, by the terms of which Connick trans-
ferred his interest in the land and certificates and also transferred
other personal property consisting of horses, farm machinery,
*etc.,* to Christian Yegen upon an understanding and agreement
that Christian Yegen should pay the balance due on the Bailey
contract as the installments became due; that Christian Yegen
should be allowed interest on the sums so paid out by him at the
rate of one per cent per month.   The complaint in paragraph 3
then proceeds: "That it was further provided that said Christian
Yegen should hold said property in trust until such time as the

proceeds derived from the rents and profits of the same, or a sale thereof or any part thereof as the said G. W. Connick might direct, would pay out all indebtedness on said land and contract, and that thereupon the said Christian Yegen would reconvey to the said G. W. Connick, his heirs, executors, administrators or assigns any and all such property as might remain in his possession after such indebtedness might be paid.'' It is further alleged that by direction of Connick, Christian Yegen sold and transferred to Fratt and O'Donnell a portion of the land mentioned, fifty-eight shares of the capital stock of the Big Ditch Company, and one hundred shares of the capital stock of the High Line Ditch Company; to Robert Connick a portion of the land, twenty-two shares of the stock of the Big Ditch Company, and forty-six shares of the stock of the High Line Ditch Company; and to this plaintiff a portion of the land, thirty shares of the stock of the Big Ditch Company, and forty-six shares of the stock of the High Line Ditch Company. Paragraph 7 of the complaint reads as follows: ''That for a long time prior to the twenty-ninth day of September, 1908, the rents and profits of said lands and the proceeds derived from the sale of portions of said lands greatly exceeded the total amount expended by the defendant Christian Yegen in the carrying out of said trust, and on that day there was in the hands of the said Christian Yegen a large amount of money due this plaintiff. That on or about the twenty-ninth day of September, 1908, the said Christian Yegen paid to the plaintiff the sum of $4,000.''

It is alleged that about December 4, 1907, Christian Yegen wrongfully, unlawfully, and fraudulently transferred and delivered to the defendant Peter Yegen twenty [18] shares of the capital stock of the Big Ditch Company, and that Peter Yegen now holds the same in his own name, and that he took such stock with full knowledge that the same was a part of the trust estate. It is alleged that about December 1, 1907, G. W. Connick, for value, sold, assigned, and transferred to this plaintiff, a corporation, all his right, title, and interest in the property transferred to Christian Yegen together with all rights of action which he

then had against the defendants or either of them. A demand upon and refusal by defendants is pleaded, and the complaint concludes with a prayer that plaintiff be adjudged to be the owner of the twenty [18] shares of capital stock of the Big Ditch Company; that each of the defendants be decreed to be a trustee of the stock for the plaintiff; that defendants be required to transfer the stock to plaintiff; and that plaintiff recover his costs.

The theory upon which the complaint proceeds is that the trust was terminated prior to the commencement of this action, and therefore plaintiff, as the owner of the residue of the estate, can sue in its own right for the property which under the terms of the trust agreement was to be turned back upon the entire fulfillment of the object of the trust; but the complaint is fatally defective in failing to allege facts which show that the trust has been terminated. There is such brief reference to the terms of the trust agreement contained in the complaint that it is difficult to determine just who was intended as beneficiary, within the meaning of section 5367, Revised Codes. If the trust was created for the purpose of securing to Bailey the unpaid balance due him, as seems most probable, then Bailey could take advantage of it at any time prior to its rescission. (Sec. 5389.) The [3] complaint fails to show that the purpose for which the trust was created has been fulfilled. It is only by inference that it can be said to allege that Christian Yegen has paid out any money whatever. His duty was to pay Bailey the amount of unpaid installments with interest; but it is uncertain from the complaint whether such payments were to be made from money received from rents, profits, and sales of the trust property, or whether Christian Yegen was to make the payments out of his own private funds. At most, it may be inferred that, if the proceeds from rents, profits, and sales of trust property did not produce funds sufficient to meet the installments as they became due, then Christian Yegen was to advance money sufficient to make up the deficit. Under the terms of the trust agreement as disclosed in paragraph 3 of the complaint quoted above, the object of the trust would not

be accomplished in any event until the proceeds from rents, profits, and sales of trust property would pay the indebtedness against the property. If one object of the trust was to secure to Christian Yegen his compensation as trustee by way of interest on moneys advanced by him, then the object of the trust would not be accomplished until this had been done. If the purpose of the trust was to secure Bailey for the unpaid balance due him, then the trust would not be terminated until he was paid.

It is alleged in paragraph 7 of the complaint quoted above that the proceeds from rents, profits, and sales exceeded the amount expended by Yegen; but it fails to allege that the amount received by him was sufficient to pay the installments due to Bailey or to reimburse himself, as provided in the trust agreement, or that Bailey has been paid. It is alleged in that paragraph that on September 29, 1908, Christian Yegen had in his possession a large amount of money belonging to plaintiff, and on that day paid over to plaintiff $4,000; but it is not alleged that this money was derived from trust property. If such was its source, the complaint fails to make the fact apparent.

The complaint is fatally defective in failing to disclose that the trust had been terminated before this action was commenced, and for this reason the judgment and order are reversed, and the cause is remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.