WILLOBURN RANCH CO., RESPONDENT, *v.* YEGEN ET AL., APPELLANTS.

(No. 3,370.)

(Submitted March 24, 1914.  Decided April 11, 1914.)

[140 Pac. 231.]

*Trusts—Reconveyance of Trust Property—Complaint—Sufficiency—Estoppel—General Denial—Corporate Capacity—Issues—Immaterial Variance.*

Trusts—Reconveyance of Trust Property—Complaint—Sufficiency.
   1. Under the doctrine that whatever is necessarily implied in, or reasonably to be inferred from, an allegation, is to be taken as directly averred, complaint in a suit to compel a reconveyance of trust property on the ground that the purposes of the trust had been fully accomplished, *held* to allege facts from which it was fairly inferable that the trustee had been fully reimbursed for all advancements made by him, and hence, though perhaps vulnerable to a special demurrer because indefinite and ambiguous, was sufficient as against a general objection to the introduction of evidence.

Same—Defenses—Pleading—Estoppel.
   2. Where, in an action to compel a reconveyance of certain trust property on the ground that the purposes of the trust had been fully accomplished, defendant in his answer recognized the original contract by which the trust was created and the property conveyed as valid, but set up title to the property by virtue of a subsequent contract, he could not thereafter contend that the original contract was void because not in writing.

Equity—Fraud—Jurisdiction.
   3. A court of equity will interpose its power to prevent the consummation of a fraud.

Corporations—General Denial—Issues.

    4. A general denial of all the allegations of the complaint not specifically admitted or denied did not put in issue the corporate capacity of plaintiff; hence error in admitting a certificate issued by the office of the secretary of state that a copy of the articles of plaintiff corporation had been filed therein, from which his signature was omitted, was nonprejudicial.

Trial—Immaterial Variance.

    5. Immaterial variances not affecting the substantial rights of the parties will be disregarded on appeal.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by the Willoburn Ranch Company against Christian Yegen and Peter Yegen. From a judgment for plaintiff and an order denying them a new trial, defendants appeal. Affirmed.

*Mr. F. B. Reynolds,* for Appellants, submitted a brief and one in reply to that of Respondent, and argued the cause orally.

In behalf of Respondent, *Mr. M. J. Lamb* submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This cause was heretofore before this court on appeals from a judgment by default against the defendant Peter Yegen, and from an order denying a motion to set aside the default. (*Willoburn Ranch Co.* v. *Yegen,* 45 Mont. 254, 122 Pac. 915.) The judgment and order were reversed on the ground that the complaint was insufficient, in that it did not set forth that the purpose for which the trust was created had been accomplished. The plaintiff thereupon filed an amended complaint to supply the omission suggested, and also to make more definite and specific the allegations showing the amount of money received and paid out by defendant Christian Yegen from rents and profits of the property in his hands, or from the proceeds of sales thereof, and what amounts had been advanced by him from his own funds.

The facts alleged in the amended complaint may be summarized as follows: On or about April 1, 1899, one G. W. Connick entered into a contract with E. G. Bailey, by the terms of which he agreed to purchase from Bailey a section of land in Yellowstone County, together with ninety shares of stock in the High Line Ditch Company, agreeing to pay therefor $7,680, as follows: $100 in cash upon the execution of the contract, and the balance in installments of $1,000, payable on April 1 of each year from 1901 to 1906, inclusive, and $1,580 on or before April 1, 1907, each of the installments to bear interest at the rate of seven per cent per annum. Bailey was required to deposit in escrow in the First National Bank of Billings a warranty deed conveying the land and stock to Connick when the purchase price should be fully paid. This Bailey did. The capital stock of the High Line Ditch Company was thereafter doubled, and the number of shares covered by the contract was thus increased to 192. On June 22, 1900, Connick subscribed for 128 shares of stock in the Big Ditch Company, agreeing to pay for it $10 per share, in payments to be made as follows: $256 in cash, and the balance in installments of $256 each, payable on December 22 of each year thereafter, from 1901 to 1904, inclusive. Each of these installments was to bear interest at the rate of eight per cent per annum. At that time all of the stock of this company was in the possession of the First National Bank of Billings, and held by it as security for moneys advanced to the Big Ditch Company under an arrangement by which each subscriber was to receive the shares subscribed for, upon full payment of the subscription price. On December 26, 1902, Connick, not being able to meet his payments as they came due under his contract with Bailey, or the installments due upon his subscription for the stock, made an agreement with Christian Yegen by which he transferred to Yegen his interest under the Bailey contract and in the stock of the Big Ditch Company, Yegen undertaking to meet the installments of the purchase price and stock subscriptions from time to time as they fell due. Connick was by the terms of this agreement to remain in possession of the land

and cultivate it, but was to yield to Yegen the profits derived from it, to be used by the latter in reimbursing himself *pro tanto* for the funds advanced to discharge Connick's obligations. Upon such sums as were advanced by Yegen, he was to be allowed compound interest at the rate of twelve per cent per annum until he had been fully repaid by Connick. This agreement covered also all the personal property on the land, including work stock, farming implements, *etc.* When Yegen had been fully repaid he was to convey to Connick all of the property remaining in his hands. When the agreement was made, Bailey substituted in place of the deed theretofore deposited with the bank, another running to Yegen. On May 5, 1906, at the request of Connick, Yegen conveyed 320 acres of the land to Daniel Pratt and I. D. O'Donnell, together with fifty-six shares of stock in the Big Ditch Company, and one hundred shares of stock in the High Line Ditch Company, for the sum of $14,400. All of this sum was retained by Yegen and was used by him to carry out the purposes of the trust. The result of this transaction was that the amounts due from Connick upon his contract with Bailey and upon his subscription for the stock of the Big Ditch Company, with interest thereon, was fully paid off and discharged by Yegen. The Bailey deed was delivered to Yegen, and also certificates for seventy-two shares of stock in the Big Ditch Company. On October 30, 1907, at Connick's request Yegen transferred to Robert Connick and others 140 acres of the land, together with twenty shares of the stock in the Big Ditch Company, and forty-six shares of the stock in the High Line Ditch Company. On December 1, 1907, Connick sold and transferred to the plaintiff his entire interest in the property held by Yegen, with all his rights of action, *etc.*, including his interest in the remaining shares of stock in the Big Ditch Company. At the time this transaction took place the plaintiff demanded an accounting by Yegen of the amounts received and disbursed by him, but failed to secure it until on or about September 14, 1908, when a partial settlement was had. Plaintiff then paid to Yegen $4,174.50. Thereupon Yegen conveyed to it

all the residue of the property remaining in his hands, except the twenty shares of stock in the Big Ditch Company which are the subject of this action. The total of the sums advanced by Yegen from 1903 to 1908, inclusive, amounted to $14,025.08. For compound interest on the various items making up this sum he was, under the terms of his agreement with Connick, allowed $5,043.67. It is alleged that on or about December 4, 1907, Yegen, without knowledge of G. W. Connick or the plaintiff, fraudulently assigned and delivered to his codefendant Peter Yegen the twenty shares of stock in the Big Ditch Company retained by him, without consideration; that Peter Yegen knew that this stock was a part of the trust estate belonging to Connick and knew that Christian Yegen had no authority to transfer the same; that neither plaintiff nor Connick knew of the transfer until some time in the month of June, 1911, and that though repeated demands have been made by plaintiff upon both defendants for the transfer to it of the stock, they have failed and refused to comply. It is further alleged that the stock has at all times been of the value of $100 per share; that each share represents a statutory inch of water; that the defendants' own land which can be irrigated by the water which the owner of the stock is entitled to use; that they have been using this water for the irrigation of their land since May 1, 1907, and that the reasonable value of the use of the stock so made by them, has been and is $200 per year. Plaintiff prays for a decree declaring the defendants trustees for its benefit of the twenty shares of stock; that they be required to transfer it to the plaintiff; and that they be adjudged to pay to the plaintiff, by way of damages for the use of the stock, the sum of $200 per year from May 1, 1907.

The answer denies that the assignment and transfer was made by Connick to Yegen as alleged in the complaint. It denies the allegations touching the subscription by Connick for the shares of stock in the Big Ditch Company, and the value of the use of it by defendants. It admits substantially all the other facts as alleged. It then alleges the following as special defenses: (1)

That by the terms of the agreement by which Connick transferred to Christian Yegen his interest under the Bailey contract, he stipulated that he would repay to this defendant all sums of money advanced by the latter during the life of the agreement; that on or about October 30, 1907, being unable to meet his obligations in this behalf, Connick was in default; that in consideration of a waiver of this default by the defendant, it was agreed by Connick that this defendant should have the stock in question as and for his individual property, and that thereupon this defendant appropriated the stock to his own use and assigned it to his codefendant Peter Yegen; (2) that on September 28, 1908, defendant Christian Yegen conveyed to the plaintiff all the property acquired by him by transfer from Connick which still remained in his hands, except the twenty shares of stock in question, and that the plaintiff accepted the conveyance and thereupon released all claim to the stock, consenting that the same should be held by this defendant as his own. There was issue by reply.

Special issues were submitted to a jury, which returned findings thereon in favor of the plaintiff. The court adopted these findings and made others, sustaining all the allegations of the complaint. It found that by the payment by the plaintiff to Yegen, of $4,174.50 on September 14, 1908, full and complete settlement and discharge was made of all claims due Yegen, including compound interest upon all sums advanced by him; that thereupon Yegen fully accounted to the plaintiff for all property acquired by him from Connick, except the twenty shares of stock; that Connick did not at any time agree that Yegen should retain the stock in consideration of an extension of time by Yegen to enable Connick to reimburse Yegen; and that the plaintiff did not, when it accepted the conveyance from Yegen, or at any other time, release its right to the stock, or agree that Yegen might retain it as his own. It found, also, that Peter Yegen took the transfer of the stock with knowledge that Christian Yegen held it in trust for Connick. The court made and entered a decree directing Peter Yegen to transfer the

stock to the plaintiff, and adjudging that the defendants pay to the plaintiff $200 for the use of it, with interest from the date of the decree, together with costs of the action. Defendants have appealed from the decree and an order denying their motion for a new trial.

Counsel for defendants contend that the complaint does not [1] allege facts sufficient to show that the purpose of the trust has been fully accomplished, and hence does not state a cause of action. It is apparent that Connick had never been vested with the legal title to any of the property, and that the transfer was made to Yegen to serve these purposes: (1) That he might discharge Connick's indebtedness as the installments fell due; (2) that he might have security for such sums as he agreed, and it became necessary for him, to advance to meet the installments, including compound interest at the stipulated rate, to compensate him for his services; and (3) that Connick should have the title conveyed to him when the other purposes had been fully accomplished. It is therefore clear, as was held on the former appeals, that Yegen could not be divested of the title until it was made to appear that he had been fully reimbursed for such advancements as he had made, together with interest at the stipulated rate. The obligations assumed by the parties being mutual, Connick could not demand a transfer to himself without having fully acquitted himself of his obligation to Yegen. The plaintiff, his assignee, stands upon no higher ground. While the complaint is not a model, in that it does not specifically allege that Yegen had been fully reimbursed for his advancements, it is fairly inferable from the facts alleged that this had been done when the action was brought; for upon summing up the amounts advanced by him as alleged, with interest, and deducting therefrom the sums received by him from the sale made to Pratt and O'Donnell, and the amount paid him by the plaintiff at the time of the transfer to it in September, 1908, it is apparent that nothing is due him. The pleading would have been open to seasonable attack by a special demurrer, on the ground that it is indefinite and perhaps ambiguous, but under

the liberal rule "that whatever is necessarily implied in or is reasonably to be inferred from an allegation is to be taken as directly averred" (Phillips on Code Pleading, sec. 352), we think that it is sufficient to withstand attack by a general demurrer, or by a general objection to the introduction of evidence, which was the mode adopted by defendants in this case. At the trial it was not controverted that Yegen had been fully reimbursed. The only issues in the evidence were upon the questions whether Connick had agreed that Yegen might retain the twenty shares of stock in consideration of the indulgence accorded by him to Connick after the latter was in default, and whether, at the time the conveyance was made to plaintiff, it released to Yegen its claim to the stock. Under this condition of the case we should be disposed, if it were necessary to support the judgment, to deem the complaint amended so as to obviate counsel's objection.

Under the Bailey contract, the evidence discloses, Hosea Connick, a brother of G. W. Connick, was the ostensible purchaser. [2] The real purchaser was G. W. Connick. He was in possession of the land, and was understood by Yegen to be the purchaser and responsible for the payment of the purchase price. When the contract was made with Yegen, Hosea Connick assigned to Yegen in writing his apparent interest under it. Thereupon Bailey, at the instance of G. W. Connick, substituted for the deed to Hosea Connick, which was on deposit in the bank, one in which Yegen was named as the grantee. A written contract was entered into by G. W. Connick and Yegen on December 27, 1902, the terms of which were substantially the terms of the contract alleged in the complaint, except that Connick was to reimburse Yegen for advancements made by him, with interest, on or before the expiration of one year from the date thereof. In this contract no mention is made of the shares of stock in the Big Ditch Company. Connick was permitted to testify, over objection by counsel for defendants, that the contract between him and Yegen was as alleged in the complaint, but was wholly verbal; that it was carried out by Yegen accord-

ing to its terms, except that he did not account for and deliver up to the plaintiff the twenty shares of stock in controversy. He stated that the written contract which was dated December 27, 1902, never became operative because it did not express correctly the terms which had been agreed to, that it was abandoned, and that the whole arrangement was left to rest entirely in parol. Counsel contend that, inasmuch as the complaint declares upon a contract creating an express trust in relation to real property, and the answer denies its existence, it was incumbent upon plaintiff to establish it by competent evidence, *viz.*, by a written instrument embodying all of its terms; otherwise, under the express provisions of the statute (Rev. Codes, sec. 4537), no trust was created. The result is, it is said, that since the contract is alleged as an entirety and is void as to the land, it is void as to the shares of stock—the personalty—also, and hence plaintiff cannot recover. Counsel for both parties discuss in their briefs the question whether the evidence discloses that the intention of the parties was to create an express trust in favor of Connick, or whether the transaction created between them the relation of mortgagor and mortgagee, and a trust resulted in favor of the plaintiff as Connick's assignee, when by its payment of $4,174.50 on September 14, 1908, it fully reimbursed Yegen for his advancements. We incline to the view that the relation sustained by the parties was that of mortgagor and mortgagee; but, as we regard the case it is not necessary to determine what the relation of the parties was. Yegen, after having recognized the contract as valid and having carried it out according to its terms, except to account for the shares of stock in question, now claims that he acquired them as a part of the trust estate, and that they became his own by virtue of an agreement with Connick and a release by the plaintiff. But for the original contract with Connick he never would have been vested with the title to the shares. Now that he alleges and seeks to establish his personal right to them under a subsequent agreement with Connick and a release by the plaintiff, it does not lie in his mouth to say

that neither had any right to them. He must prevail .by virtue of this claim or not at all. To declare the original contract [3] void and permit him to retain the stock, and deny plaintiff relief, would be to enable him to consummate a fraud, to prevent which a court of equity will always interpose its power. (*Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240.) If we accept Yegen's own testimony as to the arrangement by which he acquired the stock, the result would be the same. Connick had already paid three installments of the subscription price. Yegen obtained it by a verbal agreement with Connick, separate and independent of the agreement by which Connick's interest in the Bailey contract was transferred to him, by which he paid the balance of the subscription price with the understanding that Connick was to have it upon reimbursing him in the amounts paid, with compound interest.

Stripping the case, therefore, of all matters relating to the Bailey contract, we have left the simple question whether Yegen became legally bound to hold the shares in trust for Connick and transfer them to him when the purpose of the trust had been accomplished. Of this there can be no doubt; for the statute declares: "A transfer may be made without writing, in every case in which a writing is not expressly required by statute." (Rev. Codes, sec. 4594.) Therefore, whether Yegen became the trustee of an express trust or a mortgagee, when the purpose of the agreement had been accomplished he was bound to transfer the shares of stock to the real owner.

In order to show the legal capacity of the plaintiff, its [4] counsel offered in evidence a certificate of the secretary of state that a copy of its articles of incorporation, had been filed in his office. By oversight the secretary of state had omitted to attach his name to the certificate. The court admitted it, but required counsel to procure a properly authenticated copy and file it in the case after it had been submitted, and this was done. This action is assigned as error. There is no merit in the assignment. While the answer contains a general denial of all the allegations of the complaint not

specifically admitted or denied, this was not sufficient to put in issue the corporate capacity of the plaintiff. (*O'Donnell v. City of Butte,* 44 Mont. 97, 119 Pac. 281; *First Nat. Bank of Iowa City* v. *Smith,* 44 Mont. 305, 119 Pac. 784.) The capacity of the plaintiff was not in issue. Therefore, assuming that the evidence would have been competent, if an issue as to the capacity of plaintiff had been presented, no prejudice was wrought by the ruling.

Contention is made that there are material variances between the evidence and the allegations of the complaint, and hence [5] that the evidence is insufficient to sustain the findings. For illustration: It is said that while it is alleged that G. W. Connick had contracted with Bailey for the purchase of the land, the evidence shows that he was not a party to the contract, and therefore had no interest under it. It is true that he was apparently not a party to the contract, but it appears that while it ran to his brother Hosea as the ostensible purchaser, it was made for G. W. Connick's benefit; that after Yegen became the assignee of Hosea's apparent rights he recognized G. W. Connick as the real party in interest, and that he made disposition of the land and shares of stock in the High Line Ditch Company as directed by G. W. Connick and for his benefit. From a technical point of view, the evidence does not show that the assignment was made exactly as alleged. Yet it does show what in legal effect was the same thing, *viz.,* that though made by Hosea Connick, it was made for the benefit of G. W. Connick, the real party in interest, and who was recognized as such by Yegen. As already pointed out, however, if we adopt defendant's theory of the transaction touching the shares of the Big Ditch Company stock, it is wholly immaterial as to who were the parties to the Bailey contract or how it was assigned. The fact remains that Yegen acquired Connick's equity in the stock under an agreement that Connick was to have the legal title transferred to him when Yegen had been reimbursed for his outlay in securing it. Again, counsel say that the evidence discloses that Connick

did not in fact subscribe for the stock, but that the subscription was made by I. D. O'Donnell; hence the plaintiff's claim through Connick's assignment is without foundation. The evidence shows that the subscription was made by O'Donnell, but with the understanding with Connick that the latter could pay the subscription price and take the stock; that subsequently Connick paid three of the installments as they fell due, and that it was fully understood between the bank authorities and Yegen that Connick was to have the stock when the price had been fully paid. Indeed, the subscription list held by the bank indicated that Connick was the person to whom the bank looked for payment of the subscription price. The contentions of counsel are too excessively technical to require serious notice. The trial court properly treated the variances as immaterial. (Rev. Codes, sec. 6585.) Several other contentions made by counsel are equally without merit.

The decree and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.