MANTLE, RESPONDENT, v. CASEY ET AL., APPELLANTS.

(No. 1,950.)

(Submitted September 30, 1904. Decided December 1, 1904.)

*Process—Serving Complaint with Summons—Special Appearance—Effect on Time to Answer—Default—Striking Answer from Files—Setting Aside Default.*

1.  Code of Civil Procedure, Section 635, provides that "a copy of the complaint must be served with the summons unless two or more defendants reside in the same county; in which case a copy of the complaint need only be served on one of such defendants." *Held,* that where several defendants reside in the same county, and a copy of the complaint is served on one of them with the summons, a return of service need not show that defendants all reside in the county.

2.  Where all the defendants in an action to quiet title, residing in the same county, were served with summons, and one defendant was served with a copy of the complaint as required by Code of Civil Procedure, Section 635, tne fact that such defendant filed a disclaimer of any interest in the land did not affect the service on the other defendants ; there being nothing to show that he was not made a defendant in good faith.

3.  Under Code of Civil Procedure, Section 1020, providing that "if no answer has been filed within the time specified by the summons, or such further time as may have been granted, the clerk must enter the default of defendant," a special appearance for the purpose of moving to quash the service of summons did not extend the time for a general appearance and answering to the merits.

4.  An answer filed after defendant's default for failure to answer has been entered will be stricken from the files ; the proper practice being to move to set aside the default, tendering the answer with the motion.

5.  The failure of defendant's counsel to know that a special appearance to move to quash the service of summons did not extend the time for a general appearance and answer, is not such surprise or excusable neglect as is contemplated by Code of Civil Procedure, Section 774, as a reason for setting aside a default.

MR. JUSTICE MILBURN dissenting.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

. ACTION by Lee Mantle against George H. Casey and others. From a judgment for plaintiff, defendants appeal. Affirmed.

*Mr. Miles Cavanaugh, Messrs. Forbis & Mattison,* and *Messrs. McBride & McBride,* for Appellants.

*Mr. Jesse B. Roote, Mr. Frank W. Haskins,* and *Mr. E. B. Howell,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

This is an appeal from a judgment entered in the court below upon the default of defendants for not appearing and answering summons.

Error is charged in the ruling of the court denying a motion to quash service of summons, in allowing default to be entered pending this motion, in striking defendants' answer from the files, in refusing to set aside the default, and in entering the judgment. The judgment roll, with the proper bill of exceptions, constitutes the record upon appeal.

The chronological order of the various steps in the court below is as follows: On December 9, 1902, Mantle filed a complaint against George J. Casey, F. T. McBride, T. M. Hodgens, Lulu Largey, James M. Forbis and Charles Mattison, for the purpose of quieting his title to the south fifty feet of lots 1, 2, 3 and 4 of block 17, in the original townsite of Butte. Summons was issued and served upon defendants McBride, Casey, Forbis and Mattison on December 9th. A copy of the complaint was served upon McBride alone. Summons was served on defendant Hodgens on December 10, 1902, and returned as to the defendant Largey as not found. On December 27, 1902, defendants Hodgens and McBride severally filed their disclaimers, and alleged that they had no interest in the property described in the

complaint. On December 29th defendants Casey, Forbis and Mattison filed a motion to quash the service of summons "for the reason that same was not served in accordance with the provisions of Section 635 of the Code of Civil Procedure of the state of Montana, and said service was not made as required by the laws of Montana." This motion was based upon the return of the sheriff indorsed upon said summons, and the papers and records of the case. It was noticed for hearing on January 5, 1903. On this date the court continued the hearing until January 10, 1903. On January 9, 1903, plaintiff's attorneys filed a præcipe with the clerk for the entry of default of defendants Casey, Forbis and Mattison for "having failed to either appear or answer the complaint within twenty days after service of summons," and default was duly entered on the same day. The hearing of the motion to quash the service of summons was continued until the 24th day of January, 1903, when it was argued and submitted. The court took the same under advisement until February 10, 1903, when the motion was denied. After the motion to quash was denied, and after the entry of their default, defendants Casey, Forbis and Mattison served and filed their separate answer. On the 11th day of February, 1903, plaintiff applied to the court to set the time for hearing proofs on the said default, and the defendants Casey, Forbis and Mattison gave notice of intention to move the court to set aside the default, and that matter was taken under advisement by the court. On the 12th day of February, 1903, counsel for plaintiff moved to strike said defendants' separate answer from the files, and the said defendants Casey, Forbis and Mattison moved the court to set aside the default entered against them. All these matters were then set by the court for hearing on the 18th day of February, 1903. This hearing was postponed to February 25, 1903, and on that day defendants Casey, Forbis and Mattison filed their amended motion to set aside the default, which was supported by affidavits of James W. Forbis, John Lindsay, George Casey and F. T. McBride. The amended motion was set for hearing on the 3d day of March, 1903. On this last-named day

the affidavit of E. B. Howell was filed by the plaintiff in opposition to the affidavits filed by defendants upon the motion to set aside the default. The motion to set aside the default was argued on the 3d day of March, and taken under advisement by the court. Afterward, and on the 4th day of March, at a time when defendants and their attorneys were absent from the court, the court made an order by which it overruled the motion to set aside the default, and sustained the motion to strike defendants' answer from the files. On the 14th day of March, 1903, the court, after hearing plaintiff's proof, entered judgment in favor of plaintiff according to the prayer of the complaint.

1. Motion to Quash the Service of Summons. Section 635, Code of Civil Procedure, provides that "a copy of the complaint must be served with the summons, unless two or more defendants are residents of the same county, in which case a copy of the complaint need only be served upon one of such defendants."

The return of the sheriff shows that he served the summons upon defendants Casey, Forbis, Mattison and Hodgens, and that he served the summons and a copy of the complaint on defendant McBride. The service upon all these defendants having been made in the same county, the return of the sheriff was not required to show that they were all residents of that county. In the absence of a showing to the contrary, it is presumed that they were. (*Calderwood v. Brooks,* 28 Cal. 151; *King v. Blood,* 41 Cal. 314; *Pellier* v. *Gillespie,* 67 Cal. 582, 8 Pac. 185.)

The service was therefore sufficient as to defendants Casey, Forbis and Mattison, if McBride was a proper party defendant. Appellants insist that he was not. Section 581, Code of Civil Procedure, provides that "any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff." The action was one to quiet title, and the allegations of the complaint as to all of the defendants are, "on information and belief, that defendants wrongfully claim some interest or estate in said real estate and premises belonging to plaintiff adverse to plaintiff." Appellants insist that defendant McBride was not a proper party defendant, because on the 27th day of

December, 1902, he filed a disclaimer of any interest in the premises, and that therefore the service of a copy of the complaint on him was insufficient for service of summons on the other defendants. A portion of this disclaimer seems very pertinent to the matter under consideration. It is as follows: "Denies that he claimed any estate or interest in said property at the time of the commencement of this suit or at any time since." He may have held or claimed such interest prior to the commencement of the suit and prior to the preparation of the complaint; hence he could have properly been made a party defendant under the statute.

We recognize the doctrine that a party will not be allowed to make persons parties to a suit, who are not necessarily or properly defendants, for the fraudulent purpose of gaining jurisdiction over the matter involved, in a particular court, and thus obtaining the right to serve summons upon defendants in other counties who are proper parties, as is disclosed by the cases cited in appellants' brief. The record contains no intimation of bad faith on the part of respondent, or of any fraudulent intent on his part to compass the purposes indicated in appellants' authorities or otherwise. He may have believed, and doubtless did believe, that defendant McBride was a proper party defendant. It was quite important, in this character of suit, to bring in as defendants all persons who claimed an adverse interest in the premises, so that plaintiff's title might be fully quieted in the one suit. He would obtain as substantial relief against any defendant disclaiming any interest in the property as he would by final decree against those who contested the suit. McBride was a party defendant, and the summons issued upon the filing of the complaint was delivered to the sheriff for service. Section 635 was the sheriff's guide as to the manner in which service was to be made. He followed the statute. The statute was not intended to impose the burden upon a sheriff of selecting a defendant who is a proper party, upon whom to serve the copy of the complaint. In cases within the exception provided in Section 635, Code of Civil Procedure, he may serve a

copy of the complaint upon any defendant named therein.   We
are satisfied that the service of summons was regular in every
regard, and that the court committed no error in overruling the
motion to quash.

2.  The Entry of the Default.  Counsel for appellants strenu-
ously contend that the motion to quash the service of summons,
and the special appearance of certain defendants for that pur-
pose, prevented the entry of the default of such defendants for
want of appearance or answer in obedience to the summons.
In other words, they contend that the special appearance on the
motion to quash the service of summons extended the time for
general appearance and answer until such motion was disposed
of.  We cannot agree with this contention.

Under the statute (Section 632), summons must be directed
to the defendants, which must command them to appear "within
twenty days after the service of this summons, exclusive of the
day of service; and in case you fail to appear or answer judg-
ment will be taken against you by default for the relief de-
manded in the complaint."   Section 1020, Code of Civil Pro-
cedure, provides:   "Judgment may be had if the defendant
fails to answer the complaint, as follows:   (1)   *  *  *   (2)
In other actions, if no answer has been filed with the clerk of
the court within the time specified in the summons, or such fur-
ther time as may have been granted, the clerk must enter the
default of the defendant; and thereafter the plaintiff may ap-
ply to the court for the relief demanded in the complaint."

Here is a positive statutory provision requiring parties to
answer the summons within twenty days after the date of ser-
vice, and, if they do not do so, it is the duty of the clerk to enter
their default.   We find no statute which provides that the filing
of a motion to quash service of summons shall operate as a stay
of proceedings in the case; or as an extension of the time al-
lowed by law to appear or answer after service of the summons.
We find no case in any of the reported authorities under statutes
like ours which holds such doctrine, and counsel for appellants,
in their brief, seem to have been unsuccessful in that regard,

because no authority whatever is cited upon that particular point. On the other hand, however, we find authorities distinctly and unequivocally holding that a motion to quash service of summons does not extend the time to appear or answer. The most pointed case which has come under our observation upon this point is that of *Higley* v. *Pollock,* 21 Nev. 198, 27 Pac. 895. In that case the defendant made a motion to quash the service of summons, and failed to enter his appearance or answer in the case within the statutory time. The attorneys for plaintiffs caused his default to be entered. He afterward made a motion to open the default on the ground and for the reason that the default had been entered while the motion to quash the service of summons was pending and undisposed of. This was refused. The court, referring to the statute of Nevada as to the entry of default, and citing the cases of *Shinn* v. *Cummins,* 65 Cal. 98, 3 Pac. 133, and *McDonald* v. *Swett,* 76 Cal. 258, 18 Pac. 324, says: "The action of the judge of which the appellant complains was right. There having been no such appearance as the statute requires on the part of the defendant in the action, his default was properly taken." The cases of *Shinn* v. *Cummins* and *McDonald* v. *Swett,* cited by the court of Nevada, are also directly in point. See, also, the following cases: *Garvie* v. *Greene,* 9 S. D. 608, 70 N. W. 847; *Loring* v. *Wiltich,* 16 Fla. 617; *Greenfield* v. *Wallace,* 1 Utah, 188. We therefore conclude that the default was properly entered, and that the motion to quash the service of summons did not extend the time for appearing or answering in the suit.

3. Striking the Answer from the Files. This answer was served and filed over a month after the default was entered. It was therefore irregularly on the files, and placed there without authority of law. With their default standing, they had no right to file any answer. The proper practice would have been to have made a motion to set aside the default and obtain leave to answer, tendering their answer with the motion. This is too clear to require a citation of authorities. In fact, counsel for appellants do not seriously press this alleged error.

4. Refusal to Set Aside the Default. The motion to effect this purpose was made on February 14th, and amended on February 25th. It recites that it was made "for the reason that at the time of the entry of said default by the clerk said defendants had appeared in said action, and there was then pending in said court a motion on the part of said defendants to vacate, set aside and quash the service of summons herein upon them, and said motion had not been disposed of at the time of entry of said default, and upon the grounds of surprise, inadvertence, and excusable neglect on the part of said defendants in not making further or other appearance in said action before said default was entered," and "upon the records of a meritorious defense at law in said action, if permitted to answer therein," and "upon the records of this court, and the affidavits of George H. Casey, John Lindsay, James W. Forbis and F. T. McBride, hereto attached." The bill of exceptions recites that the answer tendered with the motion was a duplicate of the one filed on February 11, 1903.

No such inadvertence, surprise or excusable neglect as is contemplated by Section 774, Code of Civil Procedure, concerning the want of appearance or failure to file answer within the time limited by statute, is shown in any of the affidavits; but it is disclosed that appellants' attorneys believed that, by the rules and practice of the trial court, the filing of the motion to quash the service of summons would prevent an entry of any default against them until such motion was decided by the court, and, if this decision was against the motion, the court would then permit them to answer. The attorneys make affidavit to this effect, and the affidavit of John Lindsay, an ex-judge of said court, was also presented, wherein it is stated that this had always been the practice of the court. No rules of court in that regard were shown, and no particular instance in which this procedure was followed. Defendant Casey sets forth that he was advised by his attorneys that no answer need be filed or appearance made until after the determination of this motion.

It is immaterial whether such practice had been recognized

or followed, or whether rules in that regard had been adopted. Courts cannot establish rules or recognize a practice which is contrary to that prescribed by the statute. Defendants' attorneys were charged with knowledge of the practice provided by this statute. Their failure to appear or answer was not caused by surprise, inadvertence or excusable neglect, but by a misunderstanding of the law. *"Ignorantia legis neminem excusat."* A mistake in the law is not such excusable neglect, inadvertence or surprise as will be sufficient to set aside a default. (*Chase v. Swain,* 9 Cal. 130.)

5. The Entry of the Judgment. No errors can be alleged as to the entry of the judgment, other than those heretofore considered. The complaint stated a cause of action, and defendants did not appear in season. Their default was regularly entered, and an application made to the court for the hearing of plaintiff's proof, which was granted, and the proof heard. The judgment entered is in accordance with the prayer of the complaint, and no error can be predicated upon this entry.

Summons was served on the 9th day of December, 1902, on all the defendants who appeal. They did not move to quash the service of summons until on the 29th day of December—the last day allowed by the law for their appearance in the case. Had they acted speedily, and immediately made their motion, it might have been determined by the court prior to the expiration of the time for answer.

We do not find any error in the record, and therefore advise that the judgment be affirmed.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment is affirmed.

MR. JUSTICE MILBURN: I dissent. There are respectable authorities, it is true, which support the argument contained in the opinion, and the conclusion reached by a majority of the court. I cannot make myself believe that the conclusion is correct.

The summons and the statute declare to the defendant that judgment will be entered against him if he fail to appear and answer within the time fixed by law. If he appear within the twenty-day limit and demur—that is, demur to the complaint for want of jurisdiction of the court over any subject-matter— he simply, in effect, says: "Wait until the court decides whether or not I shall answer the complaint." The court, because of pressure of other business, illness of the judge or his convenience, postpones making any decision upon the demurrer until, say, ten days after the expiration of the twenty-day period. Then it follows from the argument contained in the opinion, that the clerk must, under the statute, immediately upon the expiration of the twenty days enter the default of the defendant if asked by the plaintiff so to do; and if the court decide the demurrer adversely to the defendant, and he shall immediately file his answer, it may be, on motion, stricken from the files and judgment entered against the defendant for want of an answer. It will be said in opposition to this view that this filing of a demurrer is general appearance, and, to all intents and purposes, is an answer such as is contemplated in the Code when it says that the defendant shall appear and answer within twenty days. (Section 680, Code of Civil Procedure.) But the exact language of the Code as to summons and contents thereof is invoked in the opinion to support the view that a demurrer to the jurisdiction of the person involves a default and a judgment against the defendant, if he should have an adverse ruling after the expiration of twenty days after the service, upon his objection—that is, his demurrer—to the jurisdiction of the court over his person. If the clerk, who knows what the files, records and proceedings are, may not enter a default of answer because a demurrer is pending as to jurisdiction of the subject-matter, why should he enter a default of appearance while a demurrer to the jurisdiction of the person is pending and under consideration by the court? Each demurrer is allowed by law. Shall the clerk determine a question which the court is considering, and say there has been a service of summons, when the court is

trying to find out whether there has been or not? It is just as lawful to object—that is, *demur*—to the jurisdiction of the person, as it is to demur to the jurisdiction of the court over the subject-matter, and I cannot see any difference in logic in the two situations. If a man is to be punished for exercising his legal privilege in invoking the decision of the court upon the question: "Has the court jurisdiction over me?", why shall he not be punished for invoking the court's decision upon the question: "Has the court any jurisdiction over the subject-matter in this case?" The position taken in the opinion, I think, is this: If the party sued enter his special appearance within the twenty days, and in good faith pray the decision of the court upon the important question whether he is obliged by the law to appear and defend, and he do this, and the court shall, on account of pressure of other matters pending, postpone the hearing on the defendant's motion to quash, and do not decide until after the expiration of the twenty-day period, the plaintiff may have default entered by the clerk ministerially, and leave the defendant without remedy in what is, perhaps, an iniquitous suit. In other words, the judge, speaking for the court, practically says: "Wait awhile, and, it being *my duty under the law to decide the question of jurisdiction,* I will let you know whether you must appear and answer; and if, for my own convenience, I wait until after the expiration of the twenty days, default may be entered against you meantime by the clerk, and, if so, I shall not open it, and any answer you file I shall strike from the files."

The Supreme Court of North Dakota impliedly animadverts upon forcing a party "to defend, or take the risk of being defeated on the question of jurisdiction after it was too late to be heard on the merits." (*Miner* v. *Francis & Southard,* 3 N. D. at page 552, 58 N. W. 344.)

It has been suggested to me that the defendant, if he do not wish to put himself into such an unfortunate predicament, should, at the time he makes his special appearance, objecting and demurring to the jurisdiction of the court over his person, ask for and obtain an extension of time within which to answer;

in other words, should make two motions—one to quash for want of jurisdiction, and the other for an extension of time within which to answer. The latter motion would be a general appearance. and a waiver of the objection to the jurisdiction, in my opinion; so that this he may not do.

It is not necessary to cite authorities in support of the proposition that, "by appearance to the action for any other purpose than to take advantage of the defective execution or nonexecution of process, a defendant places himself precisely in the situation in which he would be if process were executed upon him, and he thereby waives all objection to the defective execution or nonexecution of process upon him." (*Layne* v. *Ohio River R. Co.,* 35 W. Va. at page 443, 14 S. E. 125.) The facts in the case cited are not like those in the case before us, but I hardly think that the proposition will be denied.

The conclusion to be drawn from the opinion is that, if the defendant be not absolutely certain that the court has not jurisdiction of his person through legal service of summons, he must appear or take the risk of a default without remedy. I am loath to believe that such a trap is laid by law for citizens. If so, it is time to change the law. If the defendant be absolutely certain that the court has not any jurisdiction, of course he need not appear. If he invoke the law, as settled by the courts giving him the privilege of special appearance, to find out surely if he must appear and answer, then he is likely to discover that he has been led by the law into his own undoing. The opinion settles it that it is extremely dangerous to civilly and lawfully ask the court to hear and determine a motion which under the settled law of this state one has a right to make, and which it is the duty of the court to determine before the case shall proceed. Why should a defendant be given by law an opportunity to invoke and the privilege of invoking the decision of the court as to whether he must appear and answer, if, pending the rendering of the decision, the clerk may enter a default, and the defendant be prevented from filing an answer immediately upon the ren-

dering of the decision of the court telling him that he is required to answer?

I think that the court erred in striking the answers from the files, and in not opening up the default which the clerk entered while the court was considering the question whether or not he should answer at all. The answers were filed immediately after the court informed the defendant that he should answer; that is, after he overruled the motion to quash.

For the reasons hereinbefore stated, I respectfully dissent.

Rehearing denied January 16, 1905.