KIRBY, RESPONDENT, v. OREGON SHORT LINE RAILROAD CO., APPELLANT.

(No. 4,310.)

(Submitted March 11, 1921. Decided April 4, 1921.)|

[197 Pac. 254.]

*Carriers—Livestock Shipments—Rough Handling—Inadequate Watering · Facilities—Proximate Cause—Burden of Proof—Contributory Negligence—Evidence—Segregation of Damages.*

Carriers—Livestock Shipments—Inadequate Watering Facilities—Burden of Proof.

1. In an action by a shipper of livestock for damages claimed to have been sustained by the negligent failure of the railroad company to furnish watering facilities in one out of five pens into which the cattle were, unloaded for rest, feed *etc.,* the stock being accompanied by himself and another as caretakers, the burden of showing breach of defendant's duty in that regard was upon plaintiff.

Same—Negligence—Proximate Cause—Definition.

2. The proximate cause to which plaintiff's injury in a negligence case is traceable and for the resultant damage flowing from which only defendant can be held liable is that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury and without which it would not have occurred.

Same—Livestock Shipments—Inadequate Watering Facilities—Contributory Negligence.

3. Plaintiff's cattle were unloaded in five pens, four of which only were provided with watering facilities. With knowledge that the

---

1. Burden of proof of negligence on part of carrier of livestock, see notes in 15 Ann. Cas. 35; Ann. Cas. 1913E, 311.

3. Duty and liability of carrier with respect to feed and water for livestock in transit, see notes in 63 Am. St. Rep. 554; 130 Am. St. Rep. 450.

On the question of statutory duties of carriers of livestock with reference to care of stock during transportation, see note in 44 L. R. A. 449.

cattle in the fifth pen had not been watered and without effort on his part to see that they were watered before reloading, he permitted them to be reloaded and transported to the end of a thousand mile journey without water. *Held*, that plaintiff's gross negligence in failing to see that they received water was the proximate, and the defendant's breach of duty the remote, cause of the loss suffered by him, and that therefore he could not recover.

Same—Separate Causes of Action—Failure to Segregate Damages—Effect.

4. Where plaintiff claimed injury to his cattle occasioned by two causes, and in his evidence testified that their value was lessened to the extent of twenty dollars a head without segregating the damages occasioned by each, and defendant could be held liable for damages flowing from one of such causes only, the jury were in no position to determine the extent of its liability.

(MR. JUSTICE REYNOLDS dissenting.)

*Appeals from District Court, Yellowstone County; Chas. H. Taylor, Judge.*

ACTION by George B. Kirby against the Oregon Short Line Railroad Co. Plaintiff had judgment, and defendant appeals from it and an order denying its motion for a new trial.

*Mr. George H. Smith, Mr. J. L. Wines* and *Mr. John E. Covette,* for Appellant, submitted a brief; *Mr. Wines* argued the cause orally.

*Mr. E. E. Enterline* and *Mr. D. S. Edwards,* of the Bar of Minneapolis, Minnesota, for Respondent, submitted a brief; *Mr. Geo. C. Stiles,* of Counsel.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover damages alleged to have been caused by the negligence of the railroad company in transporting 1,342 head of cattle from Riverside, Oregon, to Billings, in this state. The plaintiff recovered judgment in the sum of $1,870.80, and defendant appealed therefrom, and from an order denying its motion for a new trial.

The record discloses that on May 10, 1916, the defendant company furnished a cattle train of thirty-eight stock-cars for the shipment of these cattle; that the cattle were loaded dur-

ing the morning of that day, and the journey commenced soon after noon; that during the evening of the 11th the cattle were unloaded at Lima, Montana, for feed, water and rest, and were reloaded and the journey resumed about noon on the 12th; that at Lima one steer was found dead, three others were dead when the train reached Billings, and a fifth died immediately after the cattle were unloaded there.

It is the contention of the plaintiff that at a point near Vail, Oregon, the train was negligently subjected to a violent jolt, which caused some of the cattle to be severely bruised and otherwise injured, with the result that the five died and the others were impaired in value, and that at Lima two head were negligently permitted to escape and be lost to plaintiff; that the railroad company negligently failed to provide adequate facilities for watering the cattle at Lima, and in consequence thereof about 250 head were not watered there or at all during the entire journey of approximately 1,000 miles, which resulted in unnecessary shrinkage, loss of flesh and depreciation in value.

The single assignment of error raises the question: Is the evidence sufficient to justify the verdict? For present purposes we shall assume that the evidence is sufficient to justify a finding that the two head of cattle were lost at Lima through the negligence of the defendant, and that these two animals were of the reasonable value of $120; also that the evidence supports a finding that the five head which died were of the reasonable value of $295, and that they died as the result of the negligent handling of the train by the defendant; also that fifteen other cattle (out of a group of seventy referred to by the plaintiff) received such injuries as could have been inflicted only by the negligence of the carrier in handling its train near Vail, and that the damage to these cattle amounted to $20 per head, or $300. Without undertaking to make analysis of the evidence upon which the foregoing assumptions are based, we content ourselves with the statement that it may be fairly said to sustain a verdict for $715.

There is a sort of general claim made for damages in the
sum of $1 per head for injuries to each of 1,265 head, but
there is not any substantial evidence to support it, and it is
reasonably certain from the verdict returned that it was dis-
allowed altogether by the jury.   Leaving out of further account
the 1,287 head mentioned, the largest single item of damages
is claimed on account of the depreciation in value of fifty-five
head (the remainder of the seventy mentioned above), occa-
sioned by the alleged rough handling of the train near Vail
and the failure of the company to furnish adequate facilities
for watering these cattle at Lima.

Counsel for the defendant company insist that these fifty-
five cattle are not identified as of the 250 head which did
not receive water at Lima or elsewhere on the journey, but
we are inclined to accept the evidence as sufficient for the
purpose.   Touching the question of the adequacy of the facili-
ties for watering the cattle at Lima, the plaintiff's own testi-
mony discloses the following facts: The plaintiff and a caretaker
in his employ were in charge of the cattle, and at Pocatello
arranged to have the train stopped at Lima for feed, water
and rest; that at Lima the stockyards consisted of five stock-
pens into which the cattle were unloaded, the total number
being divided as nearly equally as could be; that in each of
four of these pens provision was made for watering the cattle,
but the fifth pen, containing about 250 cattle, had no facili-
ties for watering; that the shipment was unloaded on the eve-
ning of May 11 and water furnished to the cattle in the four
pens provided with proper facilities; that complaint was made
by plaintiff to the agent of the road concerning the other pen,
but nothing was done to correct the defect or provide for
watering the cattle in that pen; that the same condition pre-
vailed on the morning of the 12th and until the cattle were re-
loaded to continue the journey; that the cattle in the fifth
pen were not watered at Lima or elsewhere on the entire trip
from Riverside to Billings; that the cattle in each of the four

pens with watering facilities were reloaded before the cattle in the fifth pen.

Our attention has not been directed to any rule of law or [1]    reason which imposed upon the railroad company the duty to equip every one of the pens with watering facilities. It was required to make adequate provision for watering these cattle, but the burden of showing a breach of that duty was upon the plaintiff. (*Grieve* v. *Illinois Cent. Ry. Co.*, 104 Iowa, 659, 74 N. W. 192.)

It was developed in the evidence for defendant, and it is perfectly apparent to anyone, that as soon as the reloading was commenced in the early morning of the 12th, and as each successive pen of the first four was made vacant, ample opportunity was afforded plaintiff to transfer the cattle from pen 5 to the vacant pen or pens, and provide them with an abundant supply of water, and his failure to take advantage of the opportunity can be attributed only to his gross neglect or willful misconduct. He was in charge of the shipment, and it was his business to see that his stock received proper care, if the facilities were available for the purpose. He could not stand upon the technical claim that the most convenient means conceivable were not provided, and rely upon his ability to recover damages from the company as compensation for the loss resulting from his own want of ordinary care.

If we accept the extreme view advanced by counsel for plaintiff that the company was negligent in failing to have the fifth pen properly equipped, the question then arises: Was that negligence the proximate cause of the damage to the cattle which were deprived of water? The proximate cause of an injury [2]    is that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which it would not have occurred. (*Mize* v. *Rocky Mountain Bell Tel. Co.*, 38 Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189, 100 Pac. 971.) The railroad company can be [3]    held liable for its failure to provide water in the fifth pen only on condition that to its lapse of duty in that respect is

directly attributable the injury to plaintiff's cattle, as any given effect is to be assigned to its efficient cause. (*Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Stones* v. *Chicago, M. & St. P. Ry. Co., ante,* p. 342, 197 Pac. 252.)

From the review of the evidence above, it appears to us to be incontrovertible that the damage to these cattle at Lima resulted, not from the lack of water in the one pen, but from the failure of the plaintiff to avail himself of the facilities afforded in the other pens. In other words, the negligence of the company was at most the remote, and not the proximate, cause of the loss suffered, and it cannot be held responsible therefor. "*Causa proxima non remota spectatur.*"

Plaintiff testified that the value of each of these fifty-five animals was lessened to the extent of $20. His testimony upon this feature of the case follows: "It was the bruises on the cattle, and the lack of water on the way here shrunk these cattle more than they should have shrunk; they was badly shrunken; could not say how much more than they should have been; probably ten to fifteen pounds to the head. * * * I now undertake to say that the condition these cattle were in when they arrived [at Billings] was caused by the jolt and by the failure to get water at Lima. That was the sole cause of it. * * * I figured these cattle were so much worse shape than they should have been ordinarily, and this was caused by the jolt and the scarcity of water at Lima." No effort whatever was made to segregate the damages occasioned by the bruises. The jury were advised by the instructions [4] given that recovery could be had only for such damages as resulted proximately from defendant's negligence. The burden was upon plaintiff to show with reasonable certainty and by a preponderance of the evidence the loss he had sustained and the amount thereof as definitely as possible. (*Carman* v. *Montana Cent. Ry. Co.,* 32 Mont. 137, 79 Pac. 690.) Since the damages were shown in the aggregate, for an undefined portion of which defendant may be liable and for an unascertained

balance of which it is not liable, the jury could not possibly determine the extent of its responsibility upon this branch of the case. To avoid the expense and delay necessarily incident to a new trial, the plaintiff should be permitted, if he so elects, to accept a judgment reduced to the amount which the evidence warrants.

The cause is remanded to the district court, with directions to grant a new trial unless within thirty days from the filing of the *remittitur* plaintiff consents in writing filed with the clerk of the lower court, to a reduction of the amount of the judgment to $715. If such consent is given, the judgment will be modified accordingly *nunc pro tunc* as of the date of the original judgment, and, as thus modified, will stand affirmed, and the order refusing a new trial will also be affirmed.

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER and GALEN concur.

MR. JUSTICE REYNOLDS: I dissent. I do not believe that plaintiff was guilty of any contributory negligence, as a matter of law, by reason of his failure to water the cattle in the one pen in which there was no water, when some of the pens were vacated in the process of reloading, and that such failure was, as a matter of law, the proximate cause of any part of the injury to the stock. It may be that it was possible to have so watered the cattle, but it does not conclusively appear that he could have done so, or, even if he could, that he was conscious of the opportunity so to do, or that his attention was called to it in any way. On the contrary, the evidence justifies the conclusion that, even up to the time that he testified on the trial, it never occurred to him that there was any such opportunity. He was asked whether or not he could not have changed the cattle from one pen to another so that all could be watered, to which he replied that he could not do so because there was not room, all pens being occupied; that it would be mixing up the cattle that should not be mixed, and that there was no way

that he could drive some cattle out of one pen and put others into it. The question was not asked him as to whether or not he could have watered them in one of the other pens after such pen was emptied in the process of reloading, and we do not know what his answer to such question would have been. In my opinion, we have no right to assume that if the question had been put to him he might not have given some good reason why that could not have been done.

It is evident that neither party nor the presiding judge in the trial below considered this feature of the case in any way, for the question was not raised by counsel in that court, nor has counsel suggested the question in this court. There was nothing in the answer charging plaintiff with contributory negligence in this respect, or that his failure to water the stock in this particular pen was the proximate cause of any part of the injury. The answer did not even charge that under the contract of shipment any duty rested on plaintiff to care for, feed and water the stock, nor was the contract offered in evidence. Defendant did not make any motion for nonsuit or directed verdict; no instruction was requested by defendant as to this particular feature of the case, and no instruction was given regarding it. In the hearing before this court, appellant's contention was, not that respondent should have watered the cattle in the pen in question by transferring them to another pen after such pen was emptied in the process of reloading, but that the evidence is insufficient to support the verdict because it does not show that the damage from rough handling did not occur between Lima and Billings, and did occur between Riverside and Ontario, that the particular cattle that were in the worst condition were not in the particular pen in which there was no water, and that it did not appear that the acts which caused the depreciation in value may not have been the result of unavoidable conditions connected with the normal movement of the train. In fact, appellant impliedly admits that, if these particular cattle were in the pen in which there was no water, that would be a proximate cause of a part of

the damage. From a review of the record in both courts, it is clear that the case was not tried by defendant upon the theory that plaintiff was in any way responsible for not having watered the stock in this particular pen by putting them in another pen having water, after it had been emptied in the process of reloading. The rule of practice heretofore recognized, to the effect that parties cannot on appeal change the theory upon which the cause was tried in the lower court, forbids a reversal in this case. (*Wall* v. *Northern Pac. Ry. Co.*, 53 Mont. 81, L. R. A. 1917C, 433, 161 Pac. 518; *In re Estate of Murphy,* 57 Mont. 273, 188 Pac. 146.)

The only specification of error set forth in appellant's brief is that the evidence is insufficient to sustain the verdict. It was a disputed question as to whether or not there was any water in the pen in question on the morning of the day that the stock was reloaded. It may be that the jury adopted the theory of defendant, and did not take into consideration whatever, in rendering its verdict, the charge that there was no water in that particular pen, as claimed by plaintiff. The total damages claimed and supported by the testimony of plaintiff based upon rough handling, entire failure of water in one pen and insufficient quantity of water in all of the pens, exceeded the sum of $2,900, yet the jury gave a verdict for only approximately two-thirds of that amount, regardless of interest. The damages were not segregated in the evidence, but the jury may have segregated them in its verdict. At least, there is no basis upon which this court can assert that it did not. It is impossible, therefore, for this court to say that upon the evidence as to rough handling and insufficiency of water in all the pens which affected all the cattle in the shipment the verdict is not sustained by the evidence.

In my opinion the judgment and order overruling motion for new trial should be affirmed.

Rehearing denied May 16, 1921.