MIHELICH, Appellant, *v.* BUTTE ELECTRIC RAILWAY
CO. et al., Respondents.

(No. 6,492.)

(Submitted September 27, 1929. Decided October 23, 1929.)

[281 Pac. 540.]

*Messrs. Binnard & Rodger* and *Mr. John A. Shelton,* for Appellant, submitted an original and a reply brief; *Mr. Shelton* argued the cause orally.

*Mr. L. O. Evans, Mr. D. M. Kelly, Mr. J. V. Dwyer* and *Mr. D. G. Stivers,* for Respondent, submitted a brief; *Mr. Kelly* argued the cause orally.

608

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Prior to March 1, 1928, John Mihelich brought action against the Butte Electric Railway Company and Harry McIntire, a motorman in the employ of the company, for damages for injuries sustained when he was struck by one of the company's street-cars at the Columbia Gardens near Butte.

It is apparent from the pleadings that the defendant company maintains a double track to the south of the Gardens, extending in an easterly and westerly direction, with loading platforms at the south entrance to the park to both the north and south of the double track; that at a point some 300 yards east of the platforms these tracks are joined by a loop, and cars on arriving at the Gardens proceed eastward on the southerly track to and around the loop, returning on the northerly track, but, owing to the conformation of the ground, such cars can only be seen for a distance of approximately 200 feet east of the platforms and park entrance.

The complaint herein contains three counts. The first count of the complaint alleges that, on April 3, 1927, plaintiff was at the entrance, or exit, to the park, desiring to take a streetcar to a point in Butte; that he saw a car pass the exit on the south track and thereupon "got into a position where he could be seen by the motorman" when the car should come into view on the northerly track, "which position was between the rails" of that track, in which position he remained and from which he saw the car come into view "very near to him, to-wit: distant about 200 feet more or less." It is alleged that plaintiff signaled the motorman to stop and had no reason to believe that the car would not be stopped at the platform where it could not have struck him, as he was westerly from the platform. This count then alleges that the car was heavily loaded; was being allowed to "coast" and was being carried down a "steeply downhill track" by the force of gravity "at a dangerously high rate of speed, to-wit: at the rate of forty miles an hour, more or less," and that brakes were not being used to control the speed of the car. It is then alleged that the car did not stop at the platform and plaintiff was so taken by surprise that he could not get out of the way and was struck, with a description of the resulting injuries; that the car, operated as it was, was highly dangerous to pedestrians and the accident would not have happened, had the motorman in charge had proper control thereof.

The second count of the complaint is based upon the "last clear chance doctrine" under the theory that the motorman saw the plaintiff in a position of peril and could have avoided the accident thereafter by the exercise of reasonable care. The third is identical with the second, except that it charges that the motorman "wilfully and wantonly" ran the car against plaintiff. The allegations of these two counts will be treated more fully later.

On May 24, 1928, the defendants answered each of the three counts of the complaint, denying the allegations of negligence and admitting many of the allegations of fact, and in each of the separate general answers interpolated, as an "admission," the statement that the plaintiff ran into the car.

In addition to these general answers, defendants made a "further affirmative and separate answer to the plaintiff's complaint" as a whole, alleging that, when the motorman was within thirty feet of the platform, he saw plaintiff struggling with another person opposite the south platform and immediately sounded an alarm and applied the brakes, which were of suitable design and in good condition, and quickly brought his car to a stop but that, before he was able to bring the car to a stop, the plaintiff broke away from the other person and "ran into the side or corner" of the car; and "that by reason of plaintiff's contributory negligence he cannot be heard to complain of or against the defendants."

The plaintiff forthwith filed written motion to strike from each of the general answers the so-called "admission" that plaintiff ran into the car, which motion was argued and submitted to the court on May 28, but no disposition was made of the motion until July 28, when the court made an order, entered in the minutes of the court, sustaining it as to the first and second counts and denying it as to the third, and granting plaintiff twenty days from that date in which to further plead.

On September 28, following, defendants caused the default of plaintiff, for failure to reply, to be entered, and three days thereafter plaintiff filed written motion, supported by affidavits and accompanied with a tendered reply, to set aside the default. Before this motion was passed upon by the court defendants gave notice of motion for judgment on the pleadings. December 1, 1928, the court overruled plaintiff's motion and granted that of the defendants. Judgment of dismissal followed.

Plaintiff has appealed from the judgment; his specifications of error raise the following questions:

1. Does the answer contain "new matter" requiring a reply?

2. Was plaintiff in default on September 28, 1928?

3. Is the entry of default a proper step in securing such a judgment?

4. Are the pleadings in such condition as to warrant the judgment?

5. If the default was properly entered, is the showing made such that the court's action in denying the motion constituted reversible error?

(1) Plaintiff asserts that there is no new matter in the answer requiring a reply, but with this assertion we do not agree.

Section 9158, Revised Codes of 1921, declares that "where the answer contains a counterclaim or any new matter, the plaintiff, if he does not demur, shall, within twenty days after service and filing of the answer, reply * * * denying generally or specifically each allegation controverted by him * * * ." This section is construed to mean that a reply is required when the new matter alleged is such that the facts set up could not be proved under a mere denial, and is not required when such facts could be proved. (*Stevens* v. *Conley,* 48 Mont. 352, Ann. Cas. 1915D, 958, 138 Pac. 189; *Doichinoff* v. *Chicago etc. Ry. Co.,* 51 Mont. 582, 154 Pac. 924; *Wilcox* v. *Newman,* 58 Mont. 54, 190 Pac. 138.)

To be available as a defense, contributory negligence must be pleaded, and that with the particularity of pleading negligence, except when such negligence appears from the allegations of the complaint. (*Surman* v. *Cruse,* 57 Mont. 253, 187 Pac. 890; *Freisheimer* v. *Missoula Creamery Co.,* 64 Mont. 443, 210 Pac. 329.) This being so, and as, in his first count above, plaintiff alleges that he was in a position where he could not have been struck except for the negligence of the defendants, the affirmative defense of contributory negligence required a reply in the absence of which plaintiff is deemed to admit the truth of the facts charging such negligence. (*State ex rel. Montana Central Ry. Co.* v. *District Court,* 32 Mont. 37, 79 Pac. 546; see, also, *Anaconda Copper Min. Co.* v. *Thomas,* 48 Mont. 222, 137 Pac. 380, and *Munger* v. *Nelson,* 61 Mont. 104, 201 Pac. 286.)

(2) Plaintiff contends that he was not in default on September 28, 1928, as his motion to strike was "in fact and in substance" a demurrer to the answer, and he had no knowledge or notice of the court's ruling thereon. He relies upon the statement made in *Bank of Commerce* v. *Fuqua,* 11 Mont.

285, 28 Am. St. Rep. 461, 14 L. R. A. 588, 28 Pac. 291, and sec. 9192, Revised Codes of 1921.

Section 9192 provides: "When a demurrer to any pleading is sustained or overruled and time to amend, answer or reply is given, the time so given runs from the service of notice of the decision or order, except when the party against whom the decision is made is in court," etc.

The statement in the *Fuqua Case* that a motion to strike is "in fact and in substance" a demurrer, is not accurate. The distinction between the two is pointed out in *Plymouth Gold Mining Co.* v. *United States Fidelity & Guaranty Co.*, 35 Mont. 23, 10 Ann. Cas. 951, 88 Pac. 565, 566, wherein it is said that such a motion "may be, in *effect*, a demurrer to the portion of the pleading to which objection is made, * * * nevertheless, its office cannot be performed by a demurrer." (See, also, *Stiemke* v. *Jankovich*, 72 Mont. 363, 233 Pac. 904.)

Here the portion to which objection is made is negligible; ▇▇ but even if the statute relied upon applied, there is considerable doubt cast on the correctness of plaintiff's position by the fact that counsel's affidavits in support of the motion to vacate the default admit that counsel were in court on the day the decision was made and go no further than the statement that counsel did not hear its announcement. Counsel explain, in their brief, that this may have been because of some unusual noise in the courtroom which overshadowed the announcement or distracted counsel's attention. If counsel were in the courtroom when the decision was orally announced, plaintiff may come within the exception noted in the statute, but we need not here determine the applicability of the statute for the following reasons:

Section 9154, Id., provides: "The plaintiff may demur to the whole answer, or to one or more separate defenses or counterclaims stated therein. In the latter case he may reply to the defenses or counterclaims not demurred to." This statute means no more than that, now, the plaintiff need not interpose a single plea to an answer but may demur to one or more separate defenses and at the same time reply to others;

but if he does demur to an answer, or to one or more separate defenses, he must reply to any remaining defenses requiring a reply; in other words, he may elect to demur to the one and reply to the other, but he must challenge all by joining issue of law or fact within the time allowed by section 9158, above. The penalty for failure so to do is found in section 9160, which provides that "if the answer contains new matter and the plaintiff fails to reply or demur thereto within the time allowed by law, the defendant may move, on notice, for such judgment as he may be entitled to upon such statement and the court may thereupon render judgment."

Prior to 1904 the provisions regarding challenge to the allegations of a complaint and the penalty for failure were found in sections 680, 690 and 1020, Code of Civil Procedure of 1895, which provided only for demurrer or answer, and for judgment by default on failure to answer within time, thus going as far as, and no further than, the above quoted provisions respecting new matter. As the law then stood it was held that a mere motion, even a motion to quash service, did not toll the statutory period for answer. (*Mantle* v. *Casey*, 31 Mont. 408, 78 Pac. 591.) Thereafter section 1020 was amended to read "if no answer, demurrer, motion, or special appearance coupled with a motion has been filed * * * within the time * * * the clerk must enter the default of the defendant * * * ." (Section 9322, Rev. Codes 1921.)

However, even under this broad declaration, not every possible "motion" has the effect of tolling the statutory time for answer; "it must be a motion the granting of which would be inconsistent with the idea that the plaintiff was entitled to recover a judgment by default upon the complaint filed." (*Donlan* v. *Thompson Falls C. & M. Co.*, 42 Mont. 257, 112 Pac. 445; see, also, *Middle States Oil Corp.* v. *Tanner-Jones Co.*, 73 Mont. 180, 235 Pac. 770.)

The supreme court of Idaho has stated the rule as follows: "A plaintiff is not entitled to take judgment by default where a proper motion by the defendant is still before the court undisposed of, unless the determination of the motion either way

would not affect the right of the plaintiff to proceed with the action." (*Central Deep Creek Orchard Co.* v. *Taft Co.*, 34 Idaho, 458, 202 Pac. 1062; *Robinson* v. *Earl Fruit Co.*, 35 Idaho, 254, 204 Pac. 534.)

Under the authority of *Mantle* v. *Casey,* above, the situations being practically the same, we might properly hold that no motion interposed by plaintiff can have the effect of tolling the time within which to reply or demur to new matter, but, without adopting that strict construction of the statute, how can it be said, even under the liberal rules announced above, that the instant motion can have the effect of tolling the time for demurrer or reply to the separate affirmative defense interposed? The motion was directed solely at the general answer, to which no reply was necessary; the office of the reply is to join issue as to the "new matter" set up in the answer (*Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601); to this new matter plaintiff filed neither demurrer, reply nor motion. Plaintiff was, therefore, in default twenty days after the filing of the answer, on May 24, and consequently in default on September 28. It is, therefore, immaterial whether or not plaintiff was in court at the time the decision on his motion was made, or whether or not he had notice thereof, as that decision did not, in any manner, affect his rights or the affirmative answer.

(3) It is true that the provisions of section 9160, above, authorizing a motion for judgment on the pleadings for failure to demur or reply to "new matter" does not, in terms, declare the plaintiff "in default" or direct the entry of default, but, when used with reference to practice and procedure, the word "default" means the failure of a party to an action to take any step required by law or rule and, therefore, a party is in default whenever he fails to file a required pleading within time, whether the statute so declares him to be or not. (Rapalje & Lawrence's Law Dictionary; *Acheson* v. *Inglis,* 155 Iowa, 239, 135 N. W. 632; *Gregson* v. *Superior Court,* 46 R. I. 362, 128 Atl. 221; *Kirkpatrick* v. *People,* 66 Colo. 100, 179 Pac. 338.)

The judgment authorized by section 9160, above, is, in fact, a default judgment, for want of a reply, and, while the entry

of default may not be essential, under the statute, to the entry of judgment, the statute authorizes the motion for judgment only "on notice."

Now, so long as the adversary does not have default entered he impliedly grants additional time within which a party may plead (*Edenfield* v. *Seal Co.*, 74 Mont. 509, 241 Pac. 227), and if, as has been held or indicated, a court may permit the filing of a reply after notice of motion, or motion, for such a judgment (*Stinson* v. *Sachs*, 8 Wash. 391, 36 Pac. 287; *Mounts* v. *Goranson*, 29 Wash. 261, 69 Pac. 740; *Bryant* v. *Davis*, 22 Mont. 534, 57 Pac. 143; *In re Koller's Estate*, 40 Mont. 137, 105 Pac. 549), a party desiring to notice such a motion can only protect himself by first having the default of the plaintiff entered and thus put an end to the time within which the plaintiff may further plead. (14 Cal. Jur. 883.) Only by so holding can effect be given to section 9160, above. The entry of default is but a procedural step in securing the judgment on the pleadings, and was proper.

(4) Are the pleadings in such condition as to warrant the ▮▮▮▮ judgment entered? In so far as the first count— plaintiff's ordinary action for damages for an injury alleged to have resulted from defendants' negligence—is concerned, the admitted plea of contributory negligence is a complete defense; the allegations of the separate affirmative defense became, in effect, an agreed statement of facts and the trial court had no authority to look to the complaint for any purpose,—it was commanded by the statute to enter such judgment as the defendants were entitled to "upon the statement." (*Davis* v. *Clark*, 2 Mont. 310; *State* v. *Quantic*, 37 Mont. 32, 94 Pac. 491; *State ex rel. Montana Central Ry. Co.* v. *District Court*, above; *Day* v. *Kelly*, 50 Mont. 306, 146 Pac. 930.) The judgment must stand as to the first count, unless the plaintiff was entitled to have the default set aside on his showing made prior to motion for judgment.

However, a different situation exists as to the second and third counts, if they, respectively, state a cause of action on the last clear chance doctrine, and charge a wilful and

wanton injury, for no amount of negligence on the part of a pedestrian will justify a driver in deliberately running him down, and no manner of negligence on the part of an injured person is a defense where the injury resulted from the wilful or wanton act of the defendant (*Neary* v. *Northern Pac. Ry. Co.*, 37 Mont. 461, 19 L. R. A. (n. s.) 446, 97 Pac. 944; 45 C. J. 981, and long list of cases cited), and "in this state it is not fatal to the complaint that contributory negligence on the part of the plaintiff appears and a plea of contributory negligence is not a defense, if the action is brought upon the theory that, notwithstanding such negligence, the defendant has the last opportunity to avoid the injury and failed to exercise it. The rule of pleading in cases which do not invoke the doctrine of the last clear chance does not have any application in * * * (a) case which depends entirely upon that doctrine." (*Melzner* v. *Northern Pac. Ry. Co.*, 46 Mont. 162, 127 Pac. 146, 150.) The last clear chance doctrine presupposes negligence on the part of both the plaintiff and defendant, and plaintiff's contributory negligence is admitted by the allegations of his second and third counts. The allegations of the separate defense, therefore, but joins issue as to the manner in which the accident happened and could have been proven under the general denial; no reply, as to the causes of action alleged in the second and third counts, was necessary.

Counsel for defendants, however, contend that neither the second nor the third count states facts sufficient to constitute a cause of action. If this contention is sustained, the judgment must be affirmed, notwithstanding no reply was necessary, as the motion for judgment on the pleadings is, in effect, a demurrer to the sufficiency of the complaint. However, on such a belated attack the pleading should not be held insufficient unless clearly bad, nor if there is a reasonable doubt as to such sufficiency. (*Equity Co-op. Assn.* v. *Equity Co-op. Milling Co.*, 63 Mont. 26, 206 Pac. 349; *Samuell* v. *Moore Merc. Co.*, 62 Mont. 232, 204 Pac. 376.)

In order intelligently to analyze the complaint (the first count being eliminated) we must have a clear understanding of the rule variously termed "the last clear chance doctrine," "the humanitarian doctrine," "the doctrine of discovered peril," or "the doctrine of antecedent and subsequent negligence" (42 C. J. 987), each of which terms is significant and throws some light on the reason for the rule.

Thompson, in his Commentaries on the Law of Negligence says that the doctrine that, although the plaintiff is guilty of contributory negligence, he may yet recover if the defendant might, nevertheless, have avoided the injury by the exercise of reasonable care, "contradicts the rule it pretends to qualify, introduces a principle of manifest injustice, and throws the whole subject into confusion," and then seeks to explain why the rule has gained general recognition. (Page 220 et seq.) This seeming contradiction is not, however, real.

Liability for injury depends upon the causal connection between the negligence or fault and the catastrophe, and attaches only when the negligence of the party charged can be said to be the sole proximate cause of the injury, as between the plaintiff and the defendant,—that cause which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury and without which it would not have occurred. (*Kirby* v. *Oregon Short Line R. R. Co.*, 59 Mont. 425, 197 Pac. 254; *Wallace* v. *Chicago etc. Ry. Co.*, 48 Mont. 427, 138 Pac. 499; *Fisher* v. *Butte Electric Ry. Co.*, 72 Mont. 594, 235 Pac. 330; s. c., 77 Mont. 85, 249 Pac. 1043.)

Thus negligence which cannot be traced as the proximate cause of the injury does not create liability, and even though the defendant is shown to have been guilty of actionable negligence and it is shown that such negligence was not the *sole* proximate cause of the injury for the reason that the negligence of the plaintiff contributed as a proximate cause, no recovery may be had; but even here plaintiff's own negli-

gence will not bar a recovery unless it existed as a concurrent, co-operating proximate cause of the injury. (45 C. J. 942, and cases cited; *Daniels* v. *Granite Bi-Metallic C. Min. Co.*, 56 Mont. 284, 184 Pac. 836.) Thus it is clear that the key to liability is: what act or acts of negligence constitute the proximate cause of the injury, without which it would not have occurred? All other acts of negligence become immaterial.

Presupposing, then, that both plaintiff and defendant are guilty of negligence and thereafter the plaintiff remains passive and oblivious to his danger, and the defendant, after discovering the perilous situation of the plaintiff, could have avoided the accident by the exercise of reasonable care but did not employ the means at his command to avoid it, there is a break in the sequence of events and defendant's last act of negligence becomes the sole proximate cause of the injury, while his initial negligence and the primary negligence of the plaintiff become but remote causes thereof. (45 C. J. 988, and cases cited; *Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226; *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 45 L. R. A. (n. s.) 896, 902, 84 Atl. 301.)

Here, knowledge and appreciation of plaintiff's peril in time to avoid the threatened injury, has been said by this court to be necessary in order to invoke the doctrine under consideration. (*Haddox* v. *Northern Pac. Ry. Co.*, 46 Mont. 185, 127 Pac. 152.) Even here the doctrine of contributory negligence is applicable, and if the negligence of plaintiff concurs as a proximate cause up to and at the time of the accident, the last clear chance doctrine does not apply, since defendant's subsequent negligence is not then the *sole* proximate cause of the injury. (*Melzner* v. *Northern Pac. Ry. Co.*, above; 45 C. J. 993.) If the plaintiff could, at the last, have avoided the injury by the exercise of reasonable care, in spite of the subsequent negligence of the defendant, he has failed to embrace "the last clear chance." (*Himmelwright* v. *Baker*, 82 Kan. 569, 109 Pac. 178; *Everett* v. *Los*

*Angeles Ry. Co.,* 115 Cal. 105, 34 L. R. A. 350, 43 Pac. 207, 46 Pac. 889.)

Evidently with the rule in mind that, under the last clear chance doctrine, primary negligence becomes immaterial, the pleader here omitted from the second and third counts the particular allegations of defendants' negligence contained in the first count and contented himself with alleging the length of the double track connected by the loop without mentioning that it had any grade or that there were any loading platforms provided; he then alleges that plaintiff approached the tracks along a path crossing them and "took a position between the rails of the northerly track * * * where he could be seen by the motorman," and, as the car came into view he began signaling the motorman to stop the car; that "while so signalling he stood for a moment between the rails" and was "unable to leave the track or to get out of the path of the approaching car in time to avoid being struck by said car, moving at the speed at which it was moving"; that the motorman could have stopped the car in time to avoid striking plaintiff "by running the car carefully and properly" but that "so seeing the plaintiff in the said perilous position, negligently ran the said car against the said plaintiff."

The third count is identical with the second, except that it alleges that the motorman "wilfully and wantonly" ran the car against plaintiff.

Counsel for defendants urge that the allegations that ▮▮▮▮ plaintiff could not leave the track, he being in possession of all his faculties, after he saw the car approximately 200 feet away, and thus avoid being struck, and that at the same time the motorman could have stopped the car "not only insult the intelligence of the court, but are false on their face, and, if testified to on a trial of the action, the court would, necessarily, treat them as though they had never been said," and for this reason they should not be considered sufficient allegations.

We recognize that mere swearing does not establish a fact and that an incredible statement, contrary to natural laws, will not support a verdict or judgment, but this rule applies only to the consideration of evidence. A complaint need only allege ultimate facts and, challenged in the manner in which it was, if there is a reasonable doubt as to the sufficiency of the allegations, the doubt must be resolved in favor of the complaint.

The allegations referred to are allegations of ultimate facts, to the effect that the plaintiff, by his own negligence, had placed himself in a place of peril, which situation was known to defendants in time to have stopped the car and prevented the injury, and that, at the time the peril became evident, plaintiff could no longer have extricated himself. Thus stating the negligence relied upon in general terms is sufficient under the circumstances here presented. (*Forquer* v. *North*, 42 Mont. 272, 112 Pac. 439; *Stewart* v. *Stone & Webster Eng. Corp.*, 44 Mont. 160, 119 Pac. 568.) With the question as to whether or not plaintiff can establish the ultimate facts thus alleged by credible evidence, we are not now concerned.

It is next contended that the allegation that the motorman saw plaintiff's perilous situation in time to have avoided the accident "by running the said car carefully and properly" refers to antecedent negligence and is insufficient.

It will be remembered that it is only in the first count that plaintiff alleges that the car was being allowed to coast down-hill at a dangerous rate of speed. Reading the remaining counts for the purpose of sustaining their sufficiency, if possible, under the rule announced above that a pleading challenged by motion for judgment shall not be held insufficient unless clearly bad, the criticised allegation refers only to the period existing after the motorman discovered plaintiff's perilous position, and alleges that the motorman could have stopped the car after such discovery, by then running his car carefully and properly; so read, the allegation is sufficient.

Whether or not the plaintiff, seeing, as he did, the approach of the car up to the moment he was struck, was guilty of concurrent co-operating negligence up to the moment of collision, is a question for the jury under proper instructions by the court. The rule laid down by this court is that the plaintiff must be "unaware of his danger," "unconscious of his danger or unable to extricate himself." (*Doichinoff* v. *Chicago etc. Ry. Co.*, above; *McIntyre* v. *Northern Pac. Ry. Co.*, 56 Mont. 43, 180 Pac. 971.) He has alleged that· he was unable to leave the track in time to avoid the injury; how or why this was so is a matter of proof.

Defendants were not entitled to judgment on the pleadings as to the second and third counts, and the entry of judgment as to these counts was, therefore, erroneous.

5. Plaintiff's motion to have the default set aside and the affidavits in support thereof apply only to the first count; here the showing is that counsel's neglect may have been excusable in so far as it related to failure to reply after the order of July 28, 1928. There is serious doubt that we could say the court abused its discretion even on the theory presented; but when we consider that the plaintiff was already in default for a period of forty days, we cannot disturb the ruling of the court in this regard.

Counsel's reply brief clearly indicates that the replication was not filed because of the belief of counsel that the new matter in the separate answer did not require a reply. Mere forgetfulness or a mistake such as indicated is not ground for setting aside a default. (*Mantle* v. *Casey*, above; *Donlan* v. *Thompson Falls C. & M. Co.*, above; *Lovell* v. *Willis*, 46 Mont. 581, Ann. Cas. 1914B, 587, 43 L. R. A. (n. s.) 930, 129 Pac. 1052; *Pacific Acceptance ̇Corp.* v. *McCue*, 71 Mont. 99, 228 Pac. 761.) When one is in default and applies to the court for relief, he must bring his case within some one of the grounds given in section 9187, Revised Codes of 1921, but even then relief is granted only as a matter of grace and cannot be demanded as a matter of right; in other words, the statute refers the matter to the sound legal dis-

cretion of the trial court (*Kersten* v. *Coleman*, 50 Mont. 82, 144 Pac. 1092), and its ruling will be interfered with only when a showing of manifest abuse of that discretion is made. (*Hegaas* v. *Hegaas*, 28 Mont. 266, 72 Pac. 656.) Here there was no abuse of discretion in so far as the application is based upon the situation existing with reference to the reply. However, as the judgment on the pleadings, as to the second and third counts, was erroneously entered, plaintiff is entitled to have the judgment set aside as to the causes of action stated in those counts and is entitled to go to trial thereon.

The judgment is reversed and the cause remanded. to the district court of Silver Bow county, with direction to vacate the judgment and proceed to trial upon the issues made by the complaint, with the first count eliminated, and defendants' answer.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.